IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRA PARTNERS, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 2:08-CV-194-J |
| RABO AGRIFINANCE, INC. AND | § | (JURY DEMANDED) |
| AG ACCEPTANCE CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## TERRA PARTNERS BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Steven E. Clark
Texas Bar No. 04294800

CLARK &MILBY, PLLC
Elm Place
1401 Elm St., Suite 3404
Dallas, Texas  75202
Tel.: 214-220-1210
Fax: 214-220-1218
Email: sclark@camfirm.com

ATTORNEYS FOR PLAINTIFF TERRA PARTNERS

# TABLE OF CONTENTS

**PAGE**

Table of Contents………………………………………………………………2

Table of Authorities……………………………………………………………….3

Summary Judgment Standards……………………………………………….5

Factual Background………………………………………………………………6

Summary Judgment is Inappropriate on Terra Partners' Conversion Claim……………6

A.  Res judicata does not bar Plaintiff's conversion claim………………………………7

B.  Defendants Wrongfully Exercised Their Purported Rights to Possession……………9

C.  Disputed Issues of Fact Exist Whether Any Agreement Was Made to Leave………12
 Terra Partners' Property on the Farm

D.  Terra Partners' Conversion Claim Was Timely Filed and is not Barred by…………14
Limitations

Summary Judgment  is Improper on Terra Partners' Claim for Declaratory Relief……..16

A. Defendants foreclosure in September 2003 was done subject to the Diversified Lien 17

B.  The Diversified lien attached once Terra XXI became owner of the 75% …………18
interest in the 960 acre tract by transfer from Defendants

C.  AAC did not rely on its purchase money security lien when it foreclosed on
 the 75% interest in the 960 acre tract…………………………………………………...19

D.  Under Texas law, the release of Robert Veigel from the Diversified Judgment ……20
did not operate to release the lien on his 25% interest in the 960 acre tract

Conclusion……………………………………………………………………22

Certificate of Service……………………………………………………………23

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)………………..5,6

*Becker v. Montgomery*, 532 U.S. 757 (2001)…………………………………15

*Billingsley v. West*, 197 S.W. 1054 (Tex.Civ.App.-El Paso 1917, no writ)…20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)……………………...5

*Census Fed. Credit Union v. Wann,* 403 N.E.2d 348, 351-52 (Ind. Ct. App. 1980)………………………………………………………………………12

*Darrow v. Summerhill,* 58 S.W. 158, 162 (Tex.Civ.App.-Dallas) aff'd
 *Summerhill v. Darrow,* 57 S.W. 942 (Tex. 1900)…………………………...20

*Dietrich Ind. Inc. v. U.S.,* 988 F.2d 568, 569, 571-72 (5th Cir. 1993)………...21

*Eustis v. Frey,* 204 S.W. 118, 119 (Tex.Civ.App.-Amarillo 1918, writ ref'd)..20

*First Nat'l Bank of Houston v. Ackerman,* 8 S.W. 45, 47 (Tex. 1888)………..21

*Gregg v. Tx. Bank & Trust Co.,* 235 S.W. 689, 694 (Ct. App. 1921, writ ref'd)………………………………………………………………………..20

*Hurt v. Read,* 108 F.2d 282, 283 (5th Cir. 1939)……………………………..21

*In re GHR Energy Corp.,* 62 B.R. 226, 232 (Bky. Ct., S.D. Tex. 1986)……….8

*In re Estate of Herring*, 970 S.W.2d 583, 588 (Tex.App.-Corpus Christi 1998, no pet.)………………………………………………………………....15

*Kaspar Wire Works, Inc. v. Leco Eng. & Mach., Inc.,* 575 F.2d 530, 538-40 (5th Cir. 1978)………………………………………………………………6,8

*Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir. 1990)…………………………...8

*Matsushita Elec. Indus. Co. v. ZenithRadio,* 475 U.S. 574, 587 (1986)………..5,6

*McGuire v. Commercial Union Ins. Co. of N.Y.,* 431 S.W.2d 347, 352 (Tex. 1968)………………………………………………………………..9

*McShaffry v. Amegy Bank Nat'l Ass'n,* 2009 Tex.App. LEXIS 2208 (Tex. App.-Houston Apr. 2009)……………………………………………………..20

**CASES**                                                                    **PAGE**

*Mehan v. Wamco XXVIII, Ltd.*, 138 S.W.3d 415, 418-419 (Tex. App.-Fort Worth 2004, no pet.)…………………………………………………………..11

*Meyers v. Ford Motor Credit Co.*, 619 S.W.2d 572, 574 (Tex. Civ. App.-Houston [14th Dist.] 1981, no writ)……………………………………………12

*Murray v. Cadle,* 257 S.W.2d 291, 299 (Tex.App.-Dallas 2008, pet. denied)…..21,22

*Navarro Oil Co. v. Cross,* 200 S.W.2d 616, 618 (Tex. 1946)……………………20

*Norfolk v. Chevron U.S.A.,* 371 F.3d 1285, 1289 (11 Cir. 2004)…………………8

*Oreck Direct LLC v. Dyson, Inc.,* 560 F.3d 398 (5th Cir. 2009)…………………..8

*Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302 (Tex. 1988)……12

*Ragas v.Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998)………….5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)…………..6

*Rosado v. General Electric Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir. 1986)…………………………………………………………………..8

*Ross v. Brown,* 396 F.Supp. 192, 196 (E.D. Tex. 1975)…………………………..21

*Rubio v. Higuchi,* 2006 Tex. App. LEXIS 10397, 2-3 (Tex.App.-San Antonio 2006, pet. denied)……………………………………………………………………15

*Temple v. Wells,* 2001 U.S. Dist. LEXIS 13652, 5-6 (E.D. La. May 18, 2001)…..16

*Vitkovitch v. Kleinecke*, 33 Tex. Civ. App. 20, 22, 75 S.W. 544, 545 (1903)…….15

*W.C. Turnbow Petroleum Corp. v. Fulton*, 194 S.W.2d 256, 257 (Tex. 1946)…...15

**STATUTES AND RULES**

Fed. R. Civ. P. 56(c)……………………………………………………………….5

TEX. BUS. & COMM. CODE ANN. § 9.609(b) (Vernon 2002)…………………11

Texas PROPERTY CODE § 24.0061 (d)-(h)…………………………………..13

Texas PROPERTY CODE § 52.001……………………………………………18,19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRA PARTNERS, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 2:08-CV-194-J |
| RABO AGRIFINANCE, INC. AND | § | (JURY DEMANDED) |
| AG ACCEPTANCE CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

**COMES NOW,** Terra Partners, Plaintiff, and submits its Brief in Opposition to

the Motion for Summary Judgment filed by Defendants Rabo Agrifinance, Inc. ("Rabo")

and Ag Acceptance Corporation ("AAC") as follows:

**I.**
**SUMMARY JUDGMENT STANDARDS**

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-25 (1986); *Ragas v.Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.

1998).

A dispute regarding a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict in favor of the moving party. *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment,

the court is required to view all inferences drawn from the factual record in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. ZenithRadio,* 475 U.S.

574, 587 (1986); *Ragas,* 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

## II.
## FACTUAL BACKGROUND[1]

Terra Partners incorporates by reference the factual statements in Steve Veigel's Affidavit, as supported by the referenced exhibits in his affidavit.

As to the Friemel settlement, Terra Partners incorporates by reference the factual statements in the Affidavit of Steven E Clark, counsel for Terra Partners.

## III.
## SUMMARY JUDGMENT IS INAPPROPRIATE ON PLAINTIFF'S CONVERSION CLAIMS

Defendants Rabo and AAC make four arguments for summary judgment on Terra Partners' claim for conversion of their property:

1.      Res judicata bars the conversion claim, as it should have been asserted in the Friemel litigation[2];

2.      Defendants had the superior right to possess the property in which Terra Partners asserts a leasehold interest;

3.      Terra Partners, through Steve Veigel and Bill Kirk, made an agreement during the eviction proceedings to leave their property on the real estate; and

---

[1] Unless otherwise noted, Terra Partners relies on the Affidavit of Steve Veigel and supporting exhibits for its summary of pertinent facts to this Brief.

[2] Defendants also argue, but fail to address or brief, that the conversion claim is barred by other litigation between the parties.  Therefore, Terra Partners' response focuses on the single briefed argument that the conversion claim should have been asserted in the Friemel litigation.  To the extent that Defendants may suggest that the conversion claim should have been asserted in the In Rem suit previously determined by this Court (Civil Action No. 2:06-CV-153-J), the 5th Circuit has held that res judicata and collateral estoppel do not attach to a counterclaim for declaratory relief other than issues actually presented for determination.  See, *Kaspar Wire Works,Inc. v. Leco Eng. & Mach., Inc.,* 575 F.2d 530, 537 (5th Cir. 1978).

4.      The statute of limitations bars the conversion claim because the original state court pleading filed before limitations ran was ineffectual due to its failure to bear counsel's signature.

**A.      Res judicata doesn't bar Plaintiff's conversion claim**

Relying on Texas law that generally prohibits claim splitting, Defendants argue that the conversion claim of Terra Partners should have been litigated in the Friemel case.[3]

Defendants' theory overlooks two important factors—first, the Friemel litigation, as it proceeded to trial, involved a dispute over who was entitled to funds in the registry of the state court for the wheat crop, not conversion of Terra Partners' property.[4]

Second, and most importantly, while Texas law generally prohibits claim splitting, an exception exists where the parties have agreed to carve out split claims, and res judicata does not prohibit the enforcement of that agreement.

The Friemel settlement[5] expressly provided that the release of claims did not include a release of any claims in other litigation or appeals pending in state or federal court.[6]

Terra Partners had already filed this litigation for conversion of its property and for declaratory relief before the Friemel case proceeded to trial on November 5, 2008,

---

[3] Defendants' Brief at 6.
[4] Despite Defendants' representation to the Court, Brief at 10, Terra Partners is not seeking recovery in this case for conversion of the wheat crop, only damages for conversion of its equipment and other personal property. The parties' settlement in the Friemel case only addressed the distribution of proceeds in the registry of the Court relating to the wheat crop. Defendants Ex. I (submitted in Defendants' Appendix of Summary Judgment Evidence) (hereinafter referred to as D. Ex. __).
[5] Id.
[6] D.Ex. I, at ¶s 5 (a)-(e), 10, 11

and was settled by agreement[7].   The *Friemel* settlement expressly referenced and preserved *both parties*' claims and defenses in pending state and federal court litigation and appeals including this case.[8]

In *Kaspar Wire Works, Inc. v. Leco Eng. & Mach., Inc.,* 575 F.2d 530, 538-40 (5th Cir. 1978), the 5th Circuit recognized that the usual rules of claim preclusion do not automatically apply to consent judgments:

> "Thus, if the parties to a suit enter into an extrajudicial settlement or compromise, there is no judgment, and future litigation is not barred by *res judicata* or collateral estoppel though, of course, a court may dismiss litigation thereafter filed on the same claim on the basis that the parties have by contract ended their controversy."

575 F.2d at 537-38.[9]

To similar effect are decisions in other circuits. See, *Norfolk v. Chevron U.S.A.,* 371 F.3d 1285, 1289 (11 Cir. 2004) ("parties may avoid part of the *res judicata* effect of a consent based dismissal simply by making an 'express reservation' of the right to sue on a particular claim in the future"); *Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir. 1990) ("consent, 'in express words or otherwise' to the splitting of the claim prevents the defendant from invoking claim preclusion"); *Rosado v. General Electric Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir. 1986) ("defendant waited until after the dismissal before raising a claim splitting objection.  That was too late.").[10]

---

[7] This case was initially filed as Cause No. CI-06F-057 on October 22, 2008 in district court in Deaf Smith County, and removed by Defendants to federal court and assigned Cause No. 2:08-CV-194-J.
[8] Id.
[9] See also, *In re GHR Energy Corp.,* 62 B.R. 226, 232 (Bky. Ct., S.D. Tex. 1986) ("a court should determine the intention of the parties as reflected by the record and words of the agreement. The consent decree must contain 'far-reaching preclusive language.') (citing *Kaspar).*
[10] Cf. *Oreck Direct LLC v. Dyson, Inc.,* 560 F.3d 398 (5th Cir. 2009) (citing *Norfolk* and *Keith,* but not expressly approving reasoning because "parties did not make "exclusive list" of matters settled thus carving out claims for another day.").

Texas law is also consistent with this principle.  See, *McGuire v. Commercial Union Ins. Co. of N.Y.,* 431 S.W.2d 347, 352 (Tex. 1968) (Agreed judgment based on settlement would not be res judicata in subsequent suit preserved by severance).

For these reasons, Defendants are not entitled to summary judgment of Terra Partners' conversion claim on the basis of res judicata.

**B.     Defendants Wrongfully Exercised Their Purported Rights to Possession**

**(A) Expert Report of Steve Veigel**

Defendants claim that "only damages related to the property in which Terra Partners claims a leasehold interest was timely disclosed.[11]  The basis for Defendants' claim is that the "purported expert report of Steve Veigel (Exhibit K) disclosed on February 2, 2009 alleges damages related solely to property purportedly leased by Terra Partners.[12]

Defendants' arguments are easily refuted by an examination of Steve Veigel's Expert Report of February 2, 2009 ("Report").  In his expert report Steve Veigel explains that "Terra Partners owed [sic] various personal property which were on the farms on October 21, 2006.  Generally, the ownership of most of the personal property and real estate is depicted by the notations made to the partial/general farm inventory prepared from a farm inspection conducted at the end of October 2006 and the beginning of November 2006."[13]   In the next paragraph Steve Veigel states "Ag Acceptance Corporation and Rabo Agrifinance wrongfully exercised dominion and control over Terra Partners personal property and property in which it had a leasehold interest."[14]

---

[11] Defendants' Brief, pp. 13-14.
[12] *Id.* at n.9.
[13] Exhibit K to Defendants' Motion for Summary Judgment, p. 9.
[14] *Id.*

The existence of these statements in the Report defeat Defendants' argument that Terra Partners did not "timely disclose" damages related to property that it owns.[15]

## (B) Superiority Argument

Defendants argue that "Plaintiff's Conversion Claims are Also Barred Because Defendants Have Superior Rights in the Property."[16]  Assuming that Defendants had valid security interests in the Property, their argument fails because they did not have the right to foreclose on their security interests until **after** they took control of the property on October 23, 2006.

The relevant chronology is as follows:

(1) June 6, 2006 – Defendants file a Petition for Temporary Restraining Order and Injunction ("TRO") in the 222nd District Court in Deaf Smith County seeking an order prohibiting the "Veigels or any of the their employees or agents, from injuring, destroying, damaging, or wasting the collateral." According to Defendants, **"The Temporary Restraining Order would not restrict the Veigels from continuing to use the collateral on the Property."[17]**

(2) June 9, 2006 – The TRO is granted in 222nd District Court.[18]

(3) July 24, 2006 – Judge Robinson of the U.S. District Court for the Northern District of Texas issues an order ("July 24, 2006 Order") prohibiting the Veigel Entities from "injuring destroying, damaging or wasting the collateral."  The July 24, 2006 Order also prohibits the removal of the collateral from Sections 21, 22, 39, 40, 42, 59, 60, 61 and 62 in Block K4, Deaf Smith County, Texas.[19]

(4) October 23, 2006 – Plaintiff Ag Acceptance Corporation took possession of the real property on which all or part of the collateral was located.  In addition to taking possession of the real property, **AAC prevented Terra Partners from moving the collateral from the portion of the farm at issue in the eviction proceedings to Sections 59 and the East one-half (E/2) of Section**

---

[15] Moreover, although referenced, Defendants have not filed any Motion to Strike Veigel as an expert or his expert report and supplemental expert report.  Additionally, counsel for Terra Partners offered to produce Veigel a second time for deposition on his supplemental report which defense counsel declined.
[16] Defendants' Brief at 13.
[17] TP Ex. A, ¶9.
[18] *See* TP Ex. B.
[19] TP Ex. C, 2-3.

**60.**[20]

(5) August 29, 2007 - Judge Robinson of the U.S. District Court for the Northern District of Texas issues opinion that Defendants may foreclose on most of the debtor's collateral at issue, but not Terra Partners' property.[21]

A secured party may take possession of collateral upon default by (1) resorting to the judicial process or (2) without judicial process only "if it proceeds without breach of the peace." TEX. BUS. & COMM. CODE ANN. § 9.609(b) (Vernon 2002). Defendants did not rely upon the judicial process until **_after_** they took possession of the collateral. Therefore, the determinative question is whether the interference with Terra Partner's leased property violated the prohibition against breach of the peace.

To make this determination, courts focus on potential property damage, trespassing, violence, and the **threat of violence**. In the instance case, Defendants' attorney Clifford Walston was escorted by an armed sheriff's deputy who prevented Steve and Bob Veigel of Terra Partners from moving the property to Sections 59 and the East one-half (E/2) of Section 60.[22] The threat of violence was clearly present as the Veigels were prevented from exercising control over their property **at gunpoint**. Additionally, the men engaged in an extremely heated argument about the rights to the property at issue.[23]

Defendants did not have the right to take possession of the property on October 23, 2006 because their actions constituted a breach of the peace. *See Mehan v. Wamco XXVIII, Ltd.*, 138 S.W.3d 415, 418-419 (Tex. App. Fort Worth 2004, no pet.) ("The evidence shows that Wamco could not obtain access to the inventory without Mehan's

---

[20] TP Ex. J, Affidavit of Steve Veigel
[21] TP Ex. D, pp.19-20.
[22] TP Ex. J, Affidavit of Steve Veigel
[23] Id.

permission or without attempting to break and enter onto Mehan's real property.  Thus, even though Wamco was entitled to repossess the inventory and equipment under section 9.609 because [Debtor] defaulted on its loan, Wamco did not have the ability to exercise control and dominion over the inventory in accordance with section 9.609 without the assistance of a court because it could not do so without breaching the peace.").  See also *Meyers v. Ford Motor Credit Co.*, 619 S.W.2d 572, 574 (Tex. Civ. App.--Houston [14th Dist.] 1981, no writ), abrogated in part on other grounds by *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302 (Tex. 1988); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 351-52 (Ind. Ct. App. 1980) ("[E]ven in attempted repossession of a chattel off a street, parking lot or unenclosed space, if repossession is verbally or otherwise contested at actual time of and in immediate vicinity of attempted repossession by defaulting party or other person in control of chattel, secured party must desist and pursue his remedy in court.").

Defendants converted Terra Partners' property by interfering with its right of possession and control when they prevented Terra Partners from moving the property.  As illustrated by the foregoing, Defendants did not have a right to interfere with Terra Partner's use or possession of the collateral on Sections 21, 22, 39, 40, 42, 59, 60, 61 and 62 in Block K4, Deaf Smith County, Texas, only the right to exercise possession on the real property they had acquired title to through foreclosure and eviction proceedings.

## C.  Disputed Issues of Fact Exist Whether Any Agreement Was Made to Leave Terra Partners' Property on the Farm

Defendants argue[24] that during the course of the eviction proceedings that an agreement was reached by the parties to leave all the equipment on the property, save for

---

[24] Defendants' Brief at 18-22.

personal items to be removed from the Veigel's home and office. According to Defendants, Terra Partners' conversion claim disappears since Defendants' dominion and control over its personal property was authorized.

Defendants chiefly rely on testimony from their counsel, Cliff Walston, who was present at the eviction proceedings and purportedly entered into the agreement with Terra Partners' representatives, Bill Kirk and Steve Veigel.

The problem with Defendants' position is that the testimony of Walston is contradicted by the sworn deposition of both Kirk and Veigel.[25]

Initially, it should be noted that under Texas Property Code § 24.0061 (d)-(h), only the serving officer has discretion in the manner in which the writ is enforced.

Walston's deposition testimony acknowledges that a hotly contested issue at the eviction was the right of Terra Partners to move its property to the 960 acre tract, which was not covered by the writ of possession.[26] Terra Partners rightfully argued, albeit unsuccessfully, that this Court's injunction did not prevent it from continuing to stay in possession of the equipment and move it, if necessary, to another portion of the farm not subject to the writ of eviction, namely, the 960 acre tract.[27]

According to Walston, Steve Veigel refused to enter into such an agreement, which lead him to instruct the Sheriff's Deputy to pile the equipment on the side of the road or to have a warehouseman remove all the property and store it.[28]

---

[25] It also makes Cliff Walston a material fact witness in this matter, which disqualifies him from continuing as counsel representing Defendants, which will be the subject of a Motion to Disqualify.

[26] Defendants' Brief at 20. Walston depo, 30:13-25; 31:1-18; 32:3-12 (D. Ex. U; TP Ex. E).

[27] See Plaintiff's Application for Temporary Restraining Order and Original Petition in Cause No. CI-06F-057, at ¶9, removed to this Court and assigned Civil Action No. 2:06-CV-153-J (TP Ex. A of Plaintiff's Appendix of Summary Judgment Evidence).

[28] Defendants' Brief at 21-22; S. Veigel depo, 136:12-15, 19-25 (D. Ex. R; TP Ex. G).

Walston then testified that Bill Kirk approached him and asked him to consider re-extending his offer.[29]  Walston further testified that he went back to Steve Veigel and extended the same offer to which he reluctantly agreed.[30]

The problem with this testimony is that Bill Kirk testified that he was not present at the eviction proceeding that day, and did not arrive in Amarillo until that evening, and had never had any conversation with Cliff Walston, nor was a part of any agreement.[31]

Defendants rely on testimony of Steve Veigel that an agreement was worked out as confirming the testimony of Walston.[32]  Unfortunately, Defendants fail to cite the Court to additional testimony of Steve Veigel that qualified this answer that he was following the direction of the Sheriff's deputy, as to what had been agreed to, not Walston's proposal.[33]

Thus, there are material issues of fact existing whether such an agreement was reached, precluding summary judgment on this basis.[34]

**D.    Terra Partners' Conversion Claim Was Timely Filed and is not Barred by Limitations**

Defendants assert that Terra Partners' conversion claims are barred by the Statute of Limitations because "if the failure to obtain an original signature on [the] Original

---

[29] TP Ex. E, Walston depo, 32: 13-23.

[30] Id., 32: 24-25; 33:1-17.

[31] TP Ex. F, Kirk depo, 23:10-19, 22-25; 24:8-12; 33: 20-25; 34: 1-2.

[32] Defendants' Brief at 22; S Veigel depo, 137:1-11 (D.Ex.R).

[33] TP Ex. G, S Veigel depo, 137:15-22; 138:15-25; 176:10-25; 177:1-4, 21-25; 178: 1-6.

[34] Defendants devote a portion of their brief to an anticipated "bad faith" affidavit to be filed by Steve Veigel to contradict his deposition testimony about an agreement being reached.  Defendants' Brief at 22-23.  Terra Partners is not relying on such an affidavit, but the *complete* testimony of the parties on this subject.  Further, in a complete misrepresentation to the Court, Defendants cite to a November 26, 2008 email of counsel's associate, Zac Duffy (D. Ex. T) as evidence confirming the agreement.  Defendants' Brief at 20-21.  In fact, Mr. Duffy was responding to a letter proposal from defense counsel about the removal of antique and inoperable equipment left on the property which this Court ruled in its In Rem Opinion was not subject to execution.  See, Letter of David LeBas dated November 14, 2008 (TP Ex. H).  How this constitutes evidence of an agreement reached in October 2006 is beyond Counsel's understanding, and is a clear mischaracterization of the subject of the Duffy email.

Petition allows Terra Partners and its counsel to avoid sanctions, then it must also be true that the pleading is of no effect and does not serve to toll the statute of limitations."[35]

Defendants cite no authority for this argument, which is not in accord with well-settled Texas and 5th Circuit precedent concerning the effect of missing or otherwise defective signatures.

In their brief, Defendants acknowledge that Terra Partners filed its petition in state court one day before the two year statute of limitations for conversion actions expired.[36]

Texas courts have long held that the lack of a signature on a pleading is not fatal to the pleading, and that a properly signed and filed amended pleading relates back to the filing of the unsigned original pleading for statute of limitations purposes. *Rubio v. Higuchi*, 2006 Tex. App. LEXIS 10397, 2-3 (Tex.App.-San Antonio 2006, pet. denied) citing *W.C. Turnbow Petroleum Corp. v. Fulton*, 194 S.W.2d 256, 257 (Tex. 1946) (stating that trial court not justified in treating pleading as nullity merely because counsel failed to sign it); *In re Estate of Herring*, 970 S.W.2d 583, 588 (Tex.App.-Corpus Christi 1998, no pet.) (same); *Vitkovitch v. Kleinecke*, 33 Tex. Civ. App. 20, 22, 75 S.W. 544, 545 (1903) (holding that when plaintiff filed properly signed amended petition after filing unsigned original petition, amended petition dated back to date of unsigned original petition).

Federal courts also adhere to the "relation back" doctrine to permit a complaint to be properly signed after the statute of limitations has expired. *Becker v. Montgomery*, 532 U.S. 757 (2001) (Litigant's failure to hand sign a timely filed notice of appeal is a

---

[35] Defendants' Brief at 25.
[36] Id. at 24.

nonjurisdictional, and therefore curable, defect.); *Temple v. Wells*, 2001 U.S. Dist. LEXIS 13652, 5-6 (E.D. La. May 18, 2001) ("The purpose of Rule 11(a) of the Federal Rules of Civil Procedure is sufficiently fulfilled [by filing a properly signed complaint] to allow relation back of the filing date.").

Given that both Texas and federal law recognize that the filing of a pleading with no, or a defective signature, does not prevent the later correction with proper signature and that such correction relates back to the original filing date for limitation purposes, Defendants are not entitled to summary judgment on the basis of limitations.

## IV.
## SUMMARY JUDGMENT IS IMPROPER ON TERRA PARTNERS' CLAIM FOR DECLARATORY RELIEF

Defendants raise four arguments in seeking summary judgment on Terra Partners' claim for declaratory relief:[37]

1.      The terms of Terra XXI's confirmed Bankruptcy Plan make the Diversified Judgment inferior to AAC's lien which it foreclosed in September, 2003;

2.      The Diversified Judgment lien couldn't attach to Terra XXI's 75% interest in the 960 acres because Terra XXI didn't own the land at the time of filing bankruptcy;

3.      AAC's purchase money lien is superior to a judgment lien; and

4.      The Diversified Judgment lien didn't attach to Robert Veigel's 25% interest in the 960 acres because Terra Partners released him from liability for the Diversified Judgment.

---

[37] Defendants also seek summary judgment on their counterclaim for declaratory relief. The counterclaim is the subject of Terra Partners' Motion to Strike, which is incorporated by reference. Terra Partners submits that any ruling as to Defendants' counterclaim for declaratory relief should be deferred until after the Court rules on the pending Motion to Strike, at which time Terra Partners should be afforded the opportunity to submit further response and briefing should the Court rule that the Defendants' Counterclaim is not stricken.

**A.     Defendants foreclosure in September 2003 was done subject to the Diversified Lien**

Only Diversified as a holder of an allowed secured claim expressly preserved its original liens.[38]  The Terra XXI Plan, § 3.06 expressly provides that the Diversified judgment lien is to be the 3rd lien on Terra XXI's real property.  Terra Partners does not dispute the fact that Terra XXI's confirmed plan granted AAC a second lien on Terra XXI's real property.

However, Shawn Smiens, Rabo's Chief Operating Officer/Managing Director, testified at trial in CI-04B-011, that AAC foreclosed on its "third or fourth" lien subject to the Diversified lien.[39]  Thus, AAC foreclosed on its original 3rd lien deed of trust which was not allowed under the Terra XXI Plan, instead of ASA's original 2nd lien deed of trust which was also posted for foreclosure the same day.

To protect its lien position vis-à-vis Diversified (whose lien AAC later acquired), AAC could have either foreclosed on its second lien, or request that Diversified subordinate its lien to AAC's existing lien, since Diversified also held a purchase money security interest in the irrigation system on the property.  AAC chose to do neither, instead foreclosing on an inferior lien subject to the Diversified lien, as testified to by Shawn Smiens, AAC's representative.

Further, Rabo and AAC could have requested as part of their declaratory relief in the In Rem suit that this Court adjudicate that the Diversified lien was extinguished by its foreclosure on the Big Farm property in September, 2003, which it failed to do.

---

[38] See paragraph 6 of Exhibit A to Terra XXI and Veigel Farm Partners confirmation orders attached as Exhibits 12 and 25 to affidavit of Steve Veigel.
[39] TP Ex. J-60.

The same *res judicata* principles which Defendants urge this Court to apply to bar Terra Partners' conversion claim apply to Defendants' failure to seek adjudication of this issue in the In Rem action.

**B.     The Diversified lien attached once Terra XXI became owner of the 75% interest in the 960 acre tract by transfer from Defendants**

Defendants argue in their Brief[40] that the Diversified judgment lien could not attach to the 75% interest in the 960 acre tract because Terra XXI did not own this interest at the time of its bankruptcy.  Defendants rely on language in the confirmed Terra XXI plan[41] that the Diversified claim will be secured by Diversified's existing abstract of judgment lien on all real estate owned by Terra XXI …on which Diversified held liens on the date of the filing of bankruptcy.

The language in the confirmed Terra XXI plan continues by stating "However, since Veigel Farm Partners is paying the claim, *Diversified may pursue Terra XXI Ltd and its property that is collateral of Diversified* only in the event of uncured default in payment of Diversified by Veigel Farm Partners."

The confirmed plan contemplated that AAC would transfer to Terra XXI the 75% interest in the 960 acres, secured by a note and deed of trust.[42]  Terra XXI acquired title to this interest by warranty deed dated 8/7/03, but effective as of 10/21/02, while Terra XXI's bankruptcy was still pending.

There is no question that under Texas law, the existing judgment lien of Diversified would attach to the 75% interest in the 960 acre tract once Terra XXI acquired ownership of that interest.  Texas Property Code § 52.001 states:

---

[40] Defendants' Brief at 29-30.
[41] D.Ex. W, ¶3.06.
[42] D.Ex. AA.

Sec.52.001.ESTABLISHMENT OF LIEN.  Except as provided by Section 52.0011 or 52.0012, a first or subsequent abstract of judgment, when it is recorded and indexed in accordance with this chapter, if the judgment is not then dormant, **constitutes a lien on and attaches to any real property of the defendant,** other than real property exempt from seizure or forced sale under Chapter 41, the Texas Constitution, or any other law, that is located in the county in which the abstract is recorded and indexed, **including real property acquired after such recording and indexing**.

Defendants rely on 11 U.S.C. § 1141(d) in stating that confirmation of a plan discharges the debtor from all pre-petition debts.  However, Defendants ignore the precatory language, "except as otherwise provided in the plan."  Here, the confirmed plan, as noted above, preserved Diversified's pre-petition lien and provided that Diversified could pursue "Terra XXI and its property" in the event that Veigel Farm Partners defaulted and failed to cure the default, which is not disputed.

Thus, pursuant to the express provisions of the confirmed plan, and by operation of Texas law, Diversified's lien attached to the 75% interest when Terra XXI acquired the 75% interest from AAC by warranty deed.

**C.     AAC did not rely on its purchase money security lien when it foreclosed on the 75% interest in the 960 acre tract**

Had AAC foreclosed on its purchase money security interest, there is no question that it should have cut off Diversified's lien interest in the property.  However, as noted above, Shawn Smiens unequivocally testified that when AAC foreclosed in September, 2003, it did so on an original 3rd lien subject to the Diversified lien.

Again, Rabo and AAC could have sought declaratory relief in the In Rem action that its foreclosure extinguished Diversified's lien as a matter of law.  They deliberately chose not to do so, because they used their acquisition of the Diversified lien to attempt

the foreclosure of Robert Veigel's 25% interest in the 960 acre tract, which was forestalled when Robert Veigel paid off the Diversified judgment in full to Defendants. Defendants are now estopped by principles of *res judicata* and judicial estoppel by arguing to the contrary here.

**D.     Under Texas law, the release of Robert Veigel from the Diversified Judgment did not operate to release the lien on his 25% interest in the 960 acre tract**

Texas law has consistently recognized that when a surety, which includes a guarantor of an obligation, pays an indebtedness or judgment owed by the primary obligor, then the surety becomes equitably subrogated to the rights of the creditor, including the right to enforce the deed of trust lien or judgment lien, as applicable. See, *Navarro Oil Co. v. Cross,* 200 S.W.2d 616, 618 (Tex. 1946); *McShaffry v. Amegy Bank Nat'l Ass'n,* 2009 Tex.App. LEXIS 2208 (Tex.App.-Houston Apr. 2009) (while payment of judgment extinguishes debt, Section 34.04 provides subrogation rights for guarantors who have paid a judgment, who may assert rights against co-guarantors for proportionate share of payment); *Gregg v. Tx. Bank & Trust Co.,* 235 S.W. 689, 694 (Ct. App. 1921, writ ref'd) (surety who paid off two notes and interest on third note held subrogated to rights of plaintiff and to enforcement of liens); *Eustis v. Frey,* 204 S.W. 118, 119 (Tex.Civ.App.-Amarillo 1918, writ ref'd) (surety paying debt held subrogated to securities, liens and priorities of creditor to extent of payment on debt); *Billingsley v. West,* 197 S.W. 1054 (Tex.Civ.App.-El Paso 1917, no writ) (sureties subrogated to rights of bank under deed of trust and entitled to foreclosure; lien not extinguished, but preserved for their benefit); *Darrow v. Summerhill,* 58 S.W. 158, 162 (Tex.Civ.App.-Dallas) aff'd *Summerhill v. Darrow,* 57 S.W. 942 (Tex. 1900) ("It is well settled that

when a surety is compelled to pay the debt of his principal, subrogation to the rights of the creditor follows").

The federal courts applying Texas law, have reached the same conclusion.  See, *Dietrich Ind. Inc. v. U.S.,* 988 F.2d 568, 569, 571-72 (5th Cir. 1993) (purchaser discharging senior lien entitled to subrogate that lien over a junior recorded lien); *Hurt v. Read,* 108 F.2d 282, 283 (5th Cir. 1939) (Sureties held entitled to be subrogated to rights of lienholders whose debt was paid to protect property); *Ross v. Brown,* 396 F.Supp. 192, 196 (E.D. Tex. 1975) (sureties who paid debt to protect title to land have equitable lien to property).

Equitable subrogation is a legal fiction where an obligation extinguished by payment of a third person, is treated as subsisting for the benefit of the third person, so that one creditor is substituted to the rights, remedies and securities of another.  *Murray v. Cadle,* 257 S.W.2d 291, 299 (Tex.App.-Dallas 2008, pet. denied) citing *First Nat'l Bank of Houston v. Ackerman,* 8 S.W. 45, 47 (Tex. 1888).

By paying off the Diversified Judgment, Robert Veigel extinguished the debt (and thus had no further liability for same), and became equitably subrogated to collect from the primary obligor (Terra XXI) and his co-sureties, including enforcement of the existing judgment lien.  That Terra Partners, in accepting assignment of such rights, released Robert Veigel and his wife from further liability is of no moment, because the lien was preserved through subrogation for enforcement against the primary obligor and co-sureties.

Since Defendants were the parties receiving payment of the Diversified Judgment, they cannot complain that Robert Veigel, and Terra Partners, as assignee, succeeded to

their lien rights, particularly when Defendants while they owned the judgment lien, took no steps to subordinate the Diversified lien to their other existing liens on the property. As a matter of law, they cannot suffer prejudice by reason of Terra Partners enforcement of the Diversified lien rights, as their debt represented by such lien, was paid in full to them. See, *Murray,* 257 S.W.3d at 302 (creditor in no worse position than it occupied before debt paid, and failed to offer evidence to show it was prejudiced).

For these reasons, Defendants are not entitled to summary judgment on the basis that Terra Partners' release of Robert Veigel in the assignment prevented the Diversified lien from attaching to the 25% interest of the 960 acre tract.

## V.
## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

/s/ Steven E. Clark
Steven E. Clark
Texas Bar No. 04294800

CLARK &MILBY, PLLC
Elm Place
1401 Elm St., Suite 3404
Dallas, Texas 75202
Tel.: 214-220-1210
Fax: 214-220-1218
Email: sclark@camfirm.com

ATTORNEYS FOR PLAINTIFF TERRA PARTNERS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING PLEADING WAS SERVED BY ELECTRONIC FILING ON COUNSEL FOR DEFENDANTS ON THIS 26TH DAY OF MAY, 2009.

/s/ Steven E. Clark