IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRA PARTNERS, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CAUSE NO. 2:08-CV-00194-J |
| | § | (Jury Demanded) |
| RABO AGRIFINANCE, INC. AND | § | |
| AG ACCEPTANCE CORPORATION, | § | |
| | § | |
| DEFENDANTS. | § | |

## AFFIDAVIT OF STEVE VEIGEL IN SUPPORT OF TERRA PARTNERS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BEFORE ME, the undersigned authority, personally appeared Steve Veigel, a managing agent for PLAINTIFF, Terra Partners, who then proved to me to be the person whose name is subscribed to this instrument, and being duly sworn, deposed and said:

1. "My name is Steve Veigel. I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein. I am a managing agent for Plaintiff, Terra Partners. I am also a managing agent for Terra XXI Ltd. and Veigel Farm Partners.

2. Defendants, Rabo AgriFinance, Inc. ("RAF") and Ag Acceptance Corporation ("AAC") filed a motion for summary judgment ("Defendants' Motion") and a brief in support ("Defendants' Brief") with appendix ("Defendants' Appendix") in the above styled cause on or about May 4, 2009. This affidavit is to support Plaintiff's response to Defendants' Motion and Defendants' Brief.

3. On page 5 of Defendants' Brief, Defendants state "*A list of the cases between the parties and their current status is attached in the Appendix at page 1 as Exhibit A*". Such list is incomplete and misleading. Defendants' list of relevant cases is misleading in that does not include:

    a) AAC's suit filed as Cause No. CI-06K-166 in the 222nd District Court in Deaf Smith County, Texas seeking to enjoin Terra Partners', as subrogee to Diversified Financial Services, writ of execution is relevant to the above styled case. After the writ expired under its own terms, AAC' non-suited all of its claims except for an order quashing the expired writ expressly without prejudice to the right of subrogation claimed by Terra Partners. *See* Exhibits 1 – 3 incorporated by reference and attached hereto;

    b) Terra XXI Ltd.'s Chapter 11 Case No. 00-20877-SAF-11 in the United States Bankruptcy Court for the Northern District of Texas wherein there were various motions made and orders issued which are relevant to the above styled case.  *See* Exhibits 4 – 16 incorporated by reference and attached hereto;

    c) Veigel Farm Partner's Chapter 11 Case No 00-20858-SAF-11 in the United States Bankruptcy Court for the Northern District of Texas wherein there were various motions made and orders issued which are relevant to the above styled case.  *See* Exhibits 17 – 28 incorporated by reference and attached hereto;

    d) Terra XXI Ltd.'s and Veigel Farm Partners' Bankruptcy Adversary Proceeding No.s 01-02019-SAF-11 and 01-02007-SAF-11 in the United States Bankruptcy Court for the Northern District of Texas wherein there were various motions made and controlling bench ruling issued which are relevant to the above styled case.  *See* Exhibits 29 – 32 incorporated by reference and attached hereto; and

    e) United States Department of Agricultural administrative determinations made by the National Appeals Division ("NAD") in which Plaintiff and Defendants were parties wherein Defendants failed to object or contest Plaintiff's claim and NAD determination that Terra Partners' had superior leasehold interests which may be relevant to the above styled case.  *See* Exhibits 33 – 37 incorporated by reference and attached hereto.

4. These cases are relevant, among other reasons, to determine whether the judgments in the State Court Wrongful Foreclosure Suit, the Second Lien Suit, the Equipment Suit, the Partition Suit, and/or the First Lien Suit are null and void and subject to collateral attack because they violated or improperly modified without subject matter jurisdiction Terra XXI Ltd.'s and Veigel Farm Partners' bankruptcy plans, discharge injunctions and the subsequent settlement agreement as clarified by the expressed controlling bench ruling made by Judge Felsenthal on July 15, 2003.

5. With respect to Defendants' Motion and Defendants' Brief assertion that the Freimel Suit serves as *res judicata* and bars Plaintiff's conversion claims in the above styled case, Defendant fail to mention that the jest of the Freimel Suit was to determine the ownership and the validity and priority of security interests in the wheat crop that Terra Partners had planted in August and September 2006 intended for grazing and harvest in the Summer of 2007.  Jim and Melonie Friemel initiated their suit on or around March 1, 2007.  AAC filed its original counterclaim to the wheat on or about April 3, 2007 and RAF filed its original cross-claim on or about April 23, 2007.  Terra Partners then filed its cross –claim against AAC and RAF.  *See* Exhibit 38 incorporated by reference and attached hereto.

6. After the parties settled with Jim and Melonie Friemel who were dismissed from the case, trial on Terra Partners', AAC's and RAFs' claims to the remaining proceeds from the 2007 wheat was set for on or about December 5, 2007.  On or

about November 29, 2007 Terra Partners file motion for leave to amend its cross-claims to assert a new claim for conversion of the 2007 wheat crop only and that it had valid superior leasehold interests in the real estate. *See* Exhibit 39 incorporated by reference and attached hereto. Terra Partners motion for leave was granted on December 5, 2008 (*see* Exhibit 40 incorporated by reference and attached hereto) and trial was continued until November 2008. Terra Partners did not raise any conversion claim related to the personal property and equipment at issue in this case in the Friemel Suit until Terra Partners filed its Second Amended Cross-Claim on October 3, 2008 (*see* Defendants Appendix Exhibit G incorporated by reference hereto).

7. Subsequent to October 3, 2008, Terra Partners initiated the above styled case as Cause No. CI-08J-086 in the 222nd District Court in and for Deaf Smith County asserting a conversion claim related to the personal property and equipment. Terra Partners claim of conversion or personal property and equipment did not fully mature and was contingent until the issue of whether some property was fixtures to the real estate or personal property subject to conversion was determined by a final judgment in the Equipment Suit not entered until January 15, 2008. *See* Exhibit 41 incorporated by reference and attached hereto. Additionally, Terra Partners claim of conversion related to the personal property and equipment that was not sold at the April 2, 2008 judicial sale did not accrue until April 2, 2008.

8. To have raised Terra Partners personal property equipment conversion claim in the entirety in the Freimel Suit, Terra Partners would have had to seek and be granted additional leave to amend it cross-claims subsequently in January and again in April 2008 long after the original Friemel Suit was set to go to trial on or around December 5, 2007.

9. At trial on about November 5, 2008 in the Friemel Suit, the parties thereto simply agreed to avoid duplicative litigation and appeals by agreeing to settle the Friemel Suit by splitting the remaining proceeds of the 2007 wheat crop which were in the registry of the Court on deposit as certificate of deposits in amounts in excess of the FDIC insured amount while maintaining and preserving all claims, defenses, and issues involved in all other ongoing litigation and appeals expressly including Terra Partners claims in the above styled case. See Defendants' Appendix Exhibit I.

10. With respect to Defendants' Motion and Defendants' Brief assertion that Terra Partners did not have the superior right of possession to the equipment owned by other parties, Terra Partners had been operating the farms on which such personal property was used, stored, maintained since Terra Partners was formed and began farming and cattle operations effective May 1, 2000 with the planting of summer crops on the farm. Some of such property was identified in written leases such as the lease with option to purchase from Veigel Farm Partners. *See* Exhibit 42 incorporated by reference and attached hereto. Other personal property which Veigel Farm Partners had on the farm which it operated from March 1, 1985 until April 30, 2000 which was not expressly identified in the equipment lease to Terra Partners was essentially abandoned or otherwise agreed by acquiesence of

Veigel Farm Partners to be used and possessed by Terra Partners. In a like fashion other personal property on the farm which belonged to other parties such as Hereford Welding, Goodin Fuels, Jim Friemel, Ralph Paschel, Bill Kirk, Steve Veigel, Bob Veigel, and Ella Marie Veigel et. al. was possessed, used, stored, etc. by Terra Partners on the farm at the others consent or acquiescence.

11. Similarly, there were various items some subsequently determined to be fixtures and some determined to be personal property in the Equipment Suit to which Terra Partners used and possessed since May 1, 2000 pursuant to leases, consent, and acquiescence of various parties who claimed title at various times to the farm. For example, *see* Exhibits 43 - 47 incorporated by reference and attached hereto.

12. RAF predecessor in interest Ag Services of America, Inc. ("ASA") and AAC had actual knowledge of Terra Partners' leasehold interest in the personal property, fixtures, and real estate as early as June or July when ASA's and AAC's representative, Melodie Taylor conducted a farm inspection with myself.

13. Subsequently, after Terra XXI Ltd. and Veigel Farm Partners filed for Chapter 11 bankruptcy in the fall of 2000 and filed motions to assume the leases with Terra Partners and Terra Partners predecessor in interest, Veigel Farms, Inc., raised objections to such leases which were rejected by the bankruptcy court and resulted in agreed orders assuming such leases. In approving such leases, neither ASA nor AAC sought to have such approved leases to be subordinated to any interest claimed by ASA or AAC.

14. About a year after the agreed orders were entered regarding the assumption of the equipment and real estate leases, Terra XXI Ltd.'s and Veigel Farm Partners' Chapter 11 Plans were confirmed over the initial objections of ASA and AAC. ASA and AAC objections were satisfied and agreed orders over such objections were entered. The agreed orders provided that the agreed orders shall control over any conflicting provision in the confirmed plans's treatment of ASA's and AAC's claim. Specifically, the agreed orders and Terra XXI Ltd.'s confirmed plan provided that ASA's and AACs' upon satisfaction of the condition precedent set forth in section 8.07 of the plans, ASA's/AAC's original notes were to be discharged and replaced with a single new promissory note representing the expressly defined new "Ag Service Claim" which was to be expressly secured only by new expressly limited liens defined as the "Ag Services Liens" evidenced by new "loan documents" in the form of such documents prepared by the State Bar of Texas which ASA/AAC was required to present for execution and recordation. Although ASA/AAC and First Ag Credit which was also to be allowed a new secured claim, sought to satisfy the condition precedent set forth in section 8.07 of the Plans (*see* Exhibits 48 - 49 incorporated by reference and attached hereto), such documents did not comply with the terms of the plans and were never executed.

15. ASA/AAC failed to expressly mention or preserve their pre-confirmation security agreements and failed to satisfy the condition precedent required to establish and evidence the allowed secured claim provided for by the agreed orders and the confirmed plans. Additionally, ASA/AAC failed to require any of Terra Partners

leases of real estate or equipment to be subordinated to any interest claimed by ASA/AAC.

16. Upon ASA/AAC declarations of default by Terra XXI Ltd. and Veigel Farm Partners in the Spring of 2003, ASA/AAC did not gain possession to any portion of the real estate, fixtures, or personal property until October 23, 2006 when AAC obtained possession to the portion of the farm which had claimed to foreclosed upon on September 2, 2003.

17. Prior to October 23, 2006, Defendants initially filed the Equipment Suit on or about June 9, 2006 as Cause No. CI-06F-057 in the 222nd District Court and obtained a temporary restraining order from Judge Saul enjoining only the defendants named therein (which did not include Terra Partners) from "*injuring, destroying, damaging or wasting*" or "*removing*" any of the identified collateral from the farm. Such identified collateral did not include any equipment owned by Terra Partners. The temporary restraining order did not enjoin the possession or use of any of the equipment by Terra Partners. Defendants' petition at paragraph 9 stated that "[t]*he Temporary Restraining Order would not restrict the Veigels from continuing to use the collateral on the Property*". *See* Exhibits 50 and 51 incorporated by reference and attached hereto.

18. After the Equipment Suit, Cause No. CI-06F-057 was removed as Cause No. 2:06-CV-00153-J, Judge Saul's Temporary Restraining Order was extended by this Court on June 23, 2006. *See* Exhibit 52 incorporated by reference and attached hereto. Subsequently on July 24, 2006 Defendants filed a brief in support of a temporary injunction wherein Defendants claimed that they had been unable to take possession of the equipment they claimed was collateral and that Defendants sought a temporary injunction to maintain the status qua (i.e., possession and use of equipment by Terra Partners on the farm). *See* Exhibit 53 incorporated by reference and attached hereto.

19. This Court entered a temporary injunction on July 24, 2006 which only enjoined the defendants therein (not Terra Partners) from "*injuring, destroying, damaging or wasting*" or "*removing*" any of the identified collateral from the farm. The temporary injunction did not enjoin Terra Partners' continued possession and use of any of the property claimed as collateral anywhere on the farm. *See* Exhibit 54 incorporated by reference and attached hereto.

20. At the eviction of a portion of the farm on October 23, 2006 pursuant to the writ of possession issued in Cause CI-2006-04972 in the Deaf Smith County Court, (*see* Exhibit 55 incorporated by reference and attached hereto). Defendants attorney, Cliff Walston misrepresented the nature and scope of this Court's temporary injunction and convinced the serving officer, Deputy Darrin Ginter that the temporary injunction issued by this Court bound all parties including Terra Partners and precluded Terra Partners or other related parties from moving any non-household property from the farm (*see* Exhibit 56 incorporated by reference and attached hereto) or onto Section 59 and the East one-half of Section 60 of the farm including property owned by Terra Partners that was never subject to any

security interest held by Defendants and was not included in the property enjoined by the temporary injunction.

21. At the eviction on October 23, 2006, Defendants attorney, Cliff Walston also misrepresented the scope of the writ of execution and convinced the serving officer, Deputy Darrin Ginter that the writ of execution also encompassed Section 59 and the East one-half of Section 60 of the farm effective wrongfully evicting Terra Partner et. al. from such portion of the farm as well. It was not until sum time after October 23, 2006 after repeated encounters with the Deaf Smith County Sheriff Deputies that Terra Partners was able to convince the Deputies that the writ of execution did not encompass Section 59 and the East one-half of Section 60 and that Terra Partners had the right to enter upon and possess such portion of the farm.

22. At the eviction on October 23, 2006, Defendants' attorney Cliff Walston requested that Deputy Ginter and his other Deputies to halt the movement of equipment to Section 59 and the East one-half of Section 60 which Deputy Ginter and the other Deputies did. Shortly thereafter, Cliff Walston requested that the Deputies prevent Terra Partners from moving its horses and llamas as well as cattle owned by Jim Friemel/F-Troop Inc. and Ned Gibbs to Section 59 and the East one-half of Section 60 falsely claiming that Section 59 and the East one-half of Section 60 was owned by his client and was covered by the writ of execution.

23. At the eviction on October 23, 2006, Defendants' attorney Cliff Walston provided me with a copy of section 24.0061 of the Texas Property Code claiming that Terra Partners were to vacate the property immediately and if we refused that the Deputies would physically remove Terra Partners et. al. and leave the household property on the highway. I pointed out to Mr. Walston and Deputy Ginter that the same section provided that the serving office had the discretion to allow Terra Partners to remove all personal property, but that it would take a significant amount of time and effort. Deputy Ginter ultimately allowed Terra Partners et. al. to remove all household personal property and some personal property in the grain elevator office from 8:00 am – 5:00 pm through October 25, 2006.

24. Defendants' attorney Cliff Walston claims in his recent deposition that Bill Kirk who was driving a white SUV approached him after Terra Partners et. al. had rejected Mr. Walston offer to allow more time to remove the household personal property from the house and office on the condition that the non-household personal property could not be removed to ask Mr. Walston to put his rejected offer back on the table which claims he did and that I accepted on the behalf of Terra Partners and Bob and Ella Marie Veigel.

25. First, Mr. Walston could not have been approached in the early afternoon by Bill Kirk as Bill Kirk flight did not leave San Antonio for Amarillo until 7:00 pm on October 23, 2006. *See* Exhibit 57 incorporated by reference and attached hereto. Additionally Bill Kirk nor anyone else present on the farm on October 23 were loading items into or driving a white SUV. Second, Mr. Walston claims that the agreement was not reduced to writing because we lacked any computer or printer to draft and printout such agreement for execution. Such assertion by Mr.

Walston is false as there was a functioning computer and printer will word processing software available for use in the house which I believe Mr. Walston and or Mr. Fiddlilke would have seen when/ir they walked through the house. Third, I had no authority to make any such agreement on the behalf of Bob or Ella Marie Veigel and Mr. Walston did not claim that he made any agreement with Bob or Ella Marie. Fourth, I had already rejected Mr. Walston's assertions regarding the nature and scope of the writ of possession and the temporary injunction and that Mr. Walston had any authority to direct or enforce the writ of execution or temporary injunction because the section 24.0061 of the Texas Property Code that Mr. Walston was showing Deputy Ginter and myself clearly indicated that the serving office had discretion to allow the tenants time to remove all personal property.

26. As I indicated in my recent deposition Mr. Walston and I plead our positions to Deputy Ginter. Initially, I used the term "agreed" or "agreement" in the context of what ultimately became the instructions from Deputy Ginter that we complied with. Subsequently in my deposition I clarified that I would not agree to anything offered by Mr. Walston on the behalf of his clients and only agreed to comply with Deputy Ginter's instructions.

27. Furthermore, during the eviction on October 23, 2006 I was unable to contact Terra Partner attorney Van Northern to discuss the situation, yet Mr. Walston was fully aware that Mr. Northern was attorney of record for Terra Partners et. al.. It is my understanding that if any "agreement" was to be made by Mr. Northern's clients with Mr. Walston or his clients such negotiations and agreement should have been handled by counsel and that Mr. Walston should not have been attempting to negotiate directly with Mr. Northern's clients.

28. Subsequent to the eviction on October 23, Van Northern on Terra Partners et. al. behalf responded to a letter dated October 27, 2007 from Defendants' attorney Tom Riney (*see* Exhibit 58 incorporated by reference and attached hereto) with a letter dated October 30, 2007 (*see* Exhibit 59 incorporated by reference and attached hereto). Mr. Northern's letter complained of Mr. Walstons wrongful actions and misrepresentation made to Deputy Ginter at the October 23, 2006 eviction.

29. With respect to Defendants' Motion and Defendants' Brief assertion that AAC's September 2, 2006 foreclosure cut off Diversified Financial Service ("DFS") abstracted judgment lien ("DFS's AJ"), at trial in Cause No.CI-04B-011 in the 222nd District Court, Defendants corporate representative Shawn Smiens admitted that AAC foreclosed subject to the debt secured by DFS's AJ. *See* Exhibit 60 incorporated by reference and attached hereto.

30. Terra XXI Ltd.'s confirmed Chapter 11 Plan along with the agreed orders over ASA/AAC objections to Terra XXI Ltd.'s and Veigel Farm Partners' plans only provided ASA/AAC a new single second lien on Terra XXI Ltd.'s real property upon the expressed condition precedent that such new lien would be properly documented. However, ASA and AAC failed to comply with the expressed provisions of Terra XXI Ltd's plan and upon default posted both ASA original

pre-confirmation 2nd lien deed of trust and AAC's original pre-confirmation 3rd lien deed of trust for foreclosure on September 2, 2003. *See* Exhibits 61 and 62 incorporated by reference and attached hereto. ACC then proceeded to foreclose on a lien (s*ee* Exhibit 63 incorporated by reference and attached hereto)that was not provided for in Terra XXI Ltd.'s confirmed plan which, if valid, effectively would have to be inferior to DFS's AJ which was expressly provided to be the 3rd lien as Mr. Smiens admitted in his testimony.

31. As part of the October 20, 2002 settlement agreement AAC agreed as part of the consideration for having Terra XXI Ltd.'s and Veigel Farm Partners' adversary claims dismissed to convey its undivided 75% interest in Section 59 and the East one-half of Section 60 to Terra XXI Ltd. or its nominee. Subsequently when Terra XXI Ltd. sought to have the property conveyed to its nominee, Terra Partners so that DFS's AJ would not attach to the property and hinder Terra XXI Ltd.'s plans to refinance the property, AAC objected. At a hearing on July 15, 2003, Judge Felsenthal upheld AAC's objection and ordered AAC to complete the conveyance to Terra XXI Ltd..

32. AAC subsequently executed a warranty deed with a vendor's lien to Terra XXI Ltd. dated August 7, 2003 but back dated to be effective as of October 21, 2002 instead of October 20, 2002. *See* Exhibit 64 incorporated by reference and attached hereto. However the real estate note to AAC is dated and began accruing interest on October 21, 2002. *See* Exhibit 65 incorporated by reference and attached hereto. Subsequently, Terra XXI Ltd. executed as additional security to AAC a deed of trust on August 14, 2003 back dated to be effective as of October 21, 2002 that was not recorded in Deaf Smith County until August 25, 2003. *See* Exhibit 66 incorporated by reference and attached hereto.

33. Upon declaring a default AAC elected to foreclose on its deed of trust instead of its vendor's lien with full knowledge of DFS's intervening DFS' AJ of record. *See* Exhibit 67 incorporated by reference and attached hereto.

    Further, Affiant sayeth not."

_____
Steve Veigel, managing agent for Terra Partners

SUBSCRIBED AND SWORN TO BEFORE ME on 26 day of May, 2009, to certify which witness my hand and official seal.

JOHN M STAGNER
NOTARY PUBLIC
of Texas
Exp. 10-05-2009

_____
Notary Public in the State of Texas