IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRA PARTNERS, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 2:08-CV-194-J |
| RABO AGRIFINANCE, INC. AND | § | (JURY DEMANDED) |
| AG ACCEPTANCE CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**TERRA PARTNER'S SUPPLEMENTAL BRIEF ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE MARY LOU ROBINSON, U.S. DISTRICT JUDGE:**

**COMES NOW,** Terra Partners, Plaintiff, and in response to the Court's Order for Briefing (Doc. # 91) dated July 30, 2010, submits its Supplemental Brief on Defendants' Motion for Summary Judgment as follows[1]:

1. **Whether Plaintiff's conversion claim has been waived under the security agreements executed by Veigel Farm Partners.**

Under general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein. Accordingly, one party cannot contractually waive the statutory rights of one who is not a party to the contract. *EEOC v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 460 (6th Cir.1999) and *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004).

Assuming *arguendo* that the waiver provision in the security agreements between Veigel Farm Partners *et. al.* and Defendants is enforceable and both Defendants can show

---

[1] With the court's permission, Plaintiff seeks to also submit additional briefing concerning its subrogation rights under the Diversified judgment.

PLAINTIFF'S SUPPLEMENTAL BRIEF ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAGE 1

they hold a joint interest in the security agreement, such waiver is not binding on Terra Partners. The security agreements at issue were executed between Veigel Farm Partners *et. al.* and Defendants before Plaintiff even came into existence. The original parties to the agreement could not have contemplated Plaintiff would be bound by its terms. Terra Partners is not a successor partnership to Veigel Farm Partners, was not assigned and did not assume or guarantee any debt to Defendants secured by the security agreements, and did not otherwise consent to be bound by the terms of the security agreements.

Plaintiff was not a signatory to the agreement at issue and cannot, by its lease of the farming equipment, have consented to waive all claims for illegal conversion. Plaintiff is not a successor or assignee of the security agreement because its leasehold interest in the farming equipment is not the same as an assignment. An assignment is a transfer *of the whole* of any property, real or personal. *See* Black's Law Dictionary (5th Ed.). In contrast, a lease of tangible personal property means a contract by which one owning such property grants to another the right to possess, use and enjoy it for specified period of time in exchange for periodic payment of a stipulated price. *Id.* In this case, Veigel Farm Partners leased the farming equipment to Plaintiff for a specified time and payment, and retained an interest in its leased equipment. Thus, Terra Partners cannot be equated to a successor or assign of the security agreement and the agreement is not enforceable against Plaintiff as lessee.

The equipment owned by Plaintiff was never encumbered by Defendants' security agreements. In, *Morrison v. Standerfer*, 2010 WL 1137031 (Tex.App.-Ft. Worth Mar. 25, 2010), "[the Defendant] was not a party to the lease between [Plaintiff and a third party], and there was no evidence that [the third party] had an ownership interest in

[Defendant's] plane or that [Defendant] consented to be bound by the terms of the lease … We hold that the lease did not create a valid, enforceable lien against [Defendant's] property." *Id.* at *3. Similarly, Terra Partners was not a party to the security agreement between Veigel Farm Partners and Defendants, and Plaintiff did not consent to be bound by the terms of the security agreement. "Texas law generally does not permit two parties to agree to place a lien on the property of a third party who does not consent to the lien. An agreement purporting to do so does not create a valid, enforceable lien against the third party's property." *Id.* at *2. The security agreement at issue between Veigel Farm Partners and the Defendants is not enforceable as to Plaintiff. Thus, Defendants never had a right to Plaintiff's personal property and their act of depriving Terra Partners of their farming equipment constitutes the tort of conversion.

As a procedural matter, at least one of the Defendants should not be able to assert the waiver defense. According to prior decisions of this court, only one of the two Defendants held an interest in the security agreement at the time the conversion took place.[2] By failing to present evidence of which of the two Defendants is asserting waiver of conversion, the argument is improperly brought by both Defendants and should be denied for that reason.

---

[2] According to the finding in *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 2006 WL 2828748 *3-*4 (N.D.Tex. 2006)(No. 2:05-CV-000314-J), Defendants admitted that only AAC held the rights under the security agreement on the date of conversion in 2006. Alternatively, according to the findings in *Rabo Agrifinance, Inc. v. Veigel Farm Partners,* 2008 WL 341425 *3 (N.D.Tex. 2008)(No. 2:05-CV-000243-J) and *Rabo Agrifinance, Inc. v. Terra XXI Ltd.,* 2007 WL 2446278 (N.D.Tex. 2007)(No. 2:06-CV-000153-J), the Defendants have admitted that AAC purportedly reassigned all of its interest to RAF's predecessor either in 2002 or 2003, and as such RAF held the rights under the security agreements on the date of conversion in 2006. Despite the contrary positions taken by Defendants in the past, all three decisions are clear that only one entity, either RAF or ACC, held the debt and security interest at any time. Therefore, only one of the two Defendants can arguably claim any contractual waiver as a defense.

Even if Defendants have a superior right of possession in the collateral, they improperly exercised self-help in breach of the peace by forcibly repossessing the farming equipment without any judicial process over the protests of the Plaintiff. A secured party may take possession of collateral upon default by (1) resorting to the judicial process or (2) without judicial process only "if it proceeds without breach of the peace." TEX. BUS. & COM. CODE ANN. §9.609(b) (Vernon 2002). The Uniform Commercial Code Comment to TEX. BUS. & COM. CODE ANN. §9.609 (Vernon 2002) states:

> "This section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer. A number of cases have held that a repossessing secured party's use of a law-enforcement officer without benefit of judicial process constituted a failure to comply with former Section 9-503".[3]

Neither the state court writ of possession to the real property (the "Big Farm") nor this Court's preliminary injunction in the EQUIPMENT CASE gave any judicial rights to Defendants to utilize law-enforcement officers to deny Plaintiff's possession of their personal property on either the "Big Farm" or the "960 Acres". To acquire such legal right, Defendants would have had to seek a writ of attachment pursuant to T.R.C.P 592 *et. seq* and TEXAS CIV. PRAC. & REM. CODE §61.001 *et. seq.*; writ of sequestration pursuant to T.R.C.P 696, 697 and TEXAS CIV. PRAC. & REM. CODE §62.001 *et. seq.*; a writ of garnishment pursuant to T.R.C.P 658; or otherwise moved to expand the preliminary injunction. Defendants did not seek such remedies.

Defendants actions are analogous to the banks actions in *Lighthouse Church*. "Bank argues the Security Agreement granted it the right to enter the real property for the

---

[3] TEX. BUS. & COM. CODE ANN. §9.609(b) was formerly §9-503.

purposes of repossessing personal property so long as the entry can be done without a breach of the peace. This is a classic "self-help" repossession provision commonly found in security agreements covering personal property. The undisputed facts show the Bank entered the real property and excluded Appellants from that property. We have already determined, under the facts presented, this action, although without force, was without legal authority." *Lighthouse Church of Cloverleaf v. Tex. Bank,* 889 S.W.2d 595, 603 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Likewise, Defendants' action in entering the "Big Farm" and preventing Plaintiff from removing their personal property against their protests is a breach of the peace in violation of TEX. BUS. & COM. CODE ANN. §9.609 and §9.625.

Furthermore, Texas courts have established that it is against public policy to enforce any contractual waiver of illegal acts such as conversion. *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198, 201 (Tex.1981) (waiver of conversion clause is not only contrary to public policy, but it is also prohibited by statue). For the foregoing reasons, the waiver provision in the security agreements is inapplicable and unenforceable as to Plaintiff.

2. **Whether Plaintiff's conversion claim is barred because Plaintiff failed to meet a condition precedent to identify property to which it had a superior right of possession and refused to demand return of the property.**

TEXAS BUSINESS & COMMERCE CODE §9.210 places the burden on the creditor to identify collateral claimed by the creditor within 14 days upon request by a debtor. TEXAS BUSINESS & COMMERCE CODE §9.625(f) allows for recovery of damages if the creditor fails to comply with §9.210. A security agreement authorizing a creditor to repossess personal property is insufficient to establish that all personal property located at

a location is owned by the debtor and encumbered by the security agreement. *Lighthouse Church of Cloverleaf v. Texas Bank,* 889 S.W.2d 595, 603-04 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

There was no legal duty on Plaintiff to immediately respond to Defendants' demand to identify property. Plaintiff submits that Defendants' demand for Plaintiff to identify its interest in the property in detail as a condition precedent to Plaintiff's conversion claim is a red herring not to be confused with the elements of conversion.

Generally, an element of conversion is that the plaintiff must have made a demand on the defendant to return the property. However, such element is only required when the defendant acquired plaintiff's personal property legally. *Lopez v. Lopez,* 271 S.W.3d 780, 784 (Tex.App.-Waco 2008, no pet. h.). Defendants acquired plaintiff's property without any legal authority since it did not belong to them. *See* Uniform Commercial Code comments to TEXAS BUSINESS & COMMERCE CODE §9.609. Furthermore, a demand by the plaintiff is not required if the defendant's acts manifest a clear repudiation of the plaintiff's rights. *In re ACM-Texas, Inc.*, 430 B.R. 371 (Bky, W.D. Tex. 2010) (citing *Cass v. Stephens*, 156 S.W.3d 38, 61 (Tex. App.—El Paso 2004)).

In any event, Plaintiff did not refuse to identify property to which it had a superior right of possession. At the eviction proceedings, Steve Veigel informed both Defendants' counsel, Cliff Walston, and Deputy Ginter, that all of the equipment located on the farm belonged to Terra Partners (Ex. G, Steve Veigel depo, p. 56 at lines 13-25; p.57 at lines 1-2; p. 135 at lines 1-25; page 136 at lines 1-15; p. 161 at lines 16-25; p. 162 at lines 1-6). Further, following completion of the eviction process, counsel for Terra Partners, Van Northern, responded to a letter from Defendants' counsel, Ted Riney, in which he

reaffirmed that all of the equipment which remained on the farm belonged to Terra Partners and demanded it be returned. (Ex. J-59 at PACER Document No. 35-70).

Finally, an inventory of the personalty left on the farm after the eviction was prepared in which the specific items were identified as property belonging to Terra Partners directly or through its right of ownership under its lease agreements for the property. (Exs. 1 and 2, attached). This inventory was made an exhibit to this Court's judgment (PACER Doc. #77-2 in Cause 2:06-CV-000153-J) in the *in rem* Equipment Case.

3. **Whether Plaintiff's conversion claim is barred because Plaintiff can show no damages.**

For most personal property, the general measure of damages for the *lost value of the property* is the fair market value of the property at the time and place of the conversion, together with legal interest. *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980). However, damages for conversion may include losses or expenses necessary to compensate the plaintiff for all actual losses or injuries sustained, not merely the reasonable market value of the property. See *Soto v. Sea Road Int'l Inc.,* 942 S.W.2d 67, 75 (Tex.App.- Corpus Christi 1997, writ denied). The measure of damages for conversion includes loss of use. See, *Bures v. First Nat'l Bank, Port Lavaca,* 806 S.W.2d 935, 939 (Tex.App.- Corpus Christi 1991).

"The usual measure of damages for loss of use of injured property is the reasonable cost of renting a replacement, although the plaintiff need not actually rent a substitute … Where the property is not rentable, the plaintiff may resort to proving the actual worth of use." *See*, *Goose Creek Consol. ISD of Chambers and Harris Counties,*

*Texas v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486, 497 (Tex.App. - Texarkana 2002, pet. denied); *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 119 (Tex. 1984).

Plaintiff can show damages for both *loss of use* and the *lost value* of Plaintiff's personal property which was ordered sold in the EQUIPMENT CASE, that was not sold at the April 2, 2008 judicial sale, and is still retained by Defendants. Plaintiff can also show damages for the loss of use of the personal property owned by Plaintiff from the time of conversion on October 23, 2006 until sold on April 2, 2008.

In establishing Plaintiff's damages for *loss of use* and *lost value* in specific equipment, Plaintiff can show both damages during the period of conversion from October 23, 2006 until November 6, 2008, the date of the Friemel settlement in which Terra Partners relinquished further lease rights to Defendants and left the 960 acre tract.

As discussed below, Plaintiff could have utilized its leased farming equipment on the "960 Acres" until levied upon by the U.S. Marshal for sale on April 2, 2008. Additionally, Plaintiff lost the opportunity to have rented such portions of equipment (*e.g.*, the irrigation equipment) owned by Terra Partners or leased by Terra Partners on both the "Big Farm" and the "960 Acres" prior to the April 2, 2008 sale and such similar equipment that was not sold at the April 2, 2008 sale to Defendants' tenants to this day and into the future.

Recovery should also be permitted for the value of Plaintiff's lost opportunity to plant crops on the 960 acres[4] after the 2007 wheat crop planted by Friemel was harvested in June and July, 2007. In *United States v. Hatahley*, 257 F.2d 920 (10th Cir. 1958), the

---

[4] Plaintiff would not be limited to plantings only on the 25% interest in the 960 acres, as it had lease rights to farm the entire 960 acre tract. Obviously, if Plaintiff had planted crops on the entire tract, it would have to account to Defendants for its ownership interest in the 75% portion of the tract.

Circuit Court stated: "Plaintiffs also testified that because of the loss of their animals they were not able to grow crops and gardens as extensively as before. ***These were factors upon which damages for loss of use could have been based.*** " *Id.* at 924 (emphasis added).

Plaintiff can show damages from the loss of use of its equipment for the period in question not only for the rental value of the equipment itself, but also for the lost opportunity to grow additional crops on the 960 acre tract after the Friemel wheat crop was harvested in June and July 2007. At a minimum, at least one more fall crop could have been planted and harvested before Plaintiff relinquished possession of the 960 acre tract in November, 2008 pursuant to the Friemel settlement.

A 9th Circuit decision points to the Restatement (Second) of Torts as the most relevant authority on the damages issue of "loss of use." The Restatement § 929 states that "[i]f one is entitled to judgment for harm to land resulting from past invasion ..., the damages include compensation for ... the loss of use of the land . . . ." Comment d to § 929 explains that "the plaintiff is entitled to recover for the past or *prospective loss of use* ... as stated in § 931 . . . Thus, under the Restatement, the value of the lost grazing opportunity turns on the type of use to which the land was 'commonly put.'" *Masayesva v. Hale*, 118 F.3d 1371, 1383-84 (9th Cir. 1997). In this case, if the farm land is commonly put to use for growing crops, then the value of the lost planting opportunity is an appropriate measure for damages based on conversion.

Thus, Terra Partners should be entitled to recover the value of the lost opportunity to plant crops on the 960 acre tract as well as the rental value of the equipment due to Defendants' unlawful conversion.

4.      **Whether there was additional land other than the Big Farm and the 960 acres on which Plaintiff could have placed the equipment in question.**

No. The injunction order entered by the Court would not allow removal of the equipment in question from the Big Farm or the 960 acres. At the hearing, Plaintiff's counsel made reference to an additional tract which he learned was approximately 5 miles away, and not a part of the Big Farm or the 960 acres.

5.      **Whether Plaintiff can assert multiple theories of damages and let the fact finder choose which theory on which to base their decision.**

The issue of loss of use is a question of fact that is properly submitted to the jury. In *Commercial Credit Equipment Corp. v. Elliott*, 414 S.W.2d 35, 43 (Tex.Civ.App.-Eastland 1967), the court found that "[the Defendant] did seek to recover special damages based upon loss of profits and the court did not err in submitting such issues to the jury."

The Fort Worth Court of Appeals recently held in *Morrison, II v. Standerfer*, 2010 WL 1137034 (Tex.App. - Ft. Worth Mar. 2010) that:

> A plaintiff must elect the recovery he wants when the jury verdict contains more than one acceptable measure of damages. And in a conversion case, a plaintiff generally may elect one of two measures of damages: loss of use damages, if the plaintiff seeks return of the property, and fair market value damages, if the plaintiff does not seek return of the property. In other words, the plaintiff may be made whole by having his property returned to him, with compensation for any loss he sustained because he did not have the use of his property, or he may be made whole by essentially selling the property to the person who has converted his property, with a price set at the property's fair market value. The damages awarded should compensate the plaintiff for actual losses sustained as a natural and proximate result of the defendant's conversion and should not unjustly enrich the plaintiff.

Courts have generally held that the plaintiff has the right to submit alternate measures of damages to the jury, and to elect the higher recovery of damages found by the jury. *See*, *DIRECTV, Inc. v. McCool*, 339 F.Supp.2d 1025, 1033 (M.D. Tenn. 2004)

(A plaintiff is entitled to submit two or more alternate theories to the jury, review the jury's verdict, and subsequently elect on which theory the plaintiff wishes to recover . . . Thus, it would be inappropriate for the Court to dismiss one of Plaintiff's claims at summary judgment simply because an election of remedies may be required."); *Boyce Iron Works v. Southwestern Bell Telephone,* 747 S.W.2d 785, 787 (Tex. 1988) (when party tries case on two or more theories of recovery, party has right to judgment on higher recovery submitted to jury); *Hart v. Moore,* 952 S.W.2d 90, 97 (Tex.App.-Amarillo 1997, pet. denied) (conversion case citing *Boyce*).

                                                  Respectfully submitted,

By: _____
STEVEN E. CLARK
STATE BAR NO. 04294800

KENNEDY CLARK & WILLIAMS P.C.,
1700 Pacific Ave., Suite 1280
Dallas, Texas 75202
Tel.: (214) 979-1122, X310
Direct Fax: (469) 484-7618
Email: sclark@kcwfirm.com

ATTORNEYS FOR PLAINTIFFS
TERRA PARTNERS

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served by electronic means upon Defendants' counsel of record, pursuant to the Federal Rules of Civil Procedure, on this 6th day of August, 2010.

Clifford H. Walston
FARRAR & BALL, LLP
1010 Lamar, Suite 1600
Houston, Texas  78730

Barbara Whiten Balliette
REID DAVIS LLP
7800 Shoal Creek Boulevard
Austin, Texas  78757

_____
Steven E. Clark