IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

TERRA PARTNERS,          §
§
        Plaintiff,        §
§
v.                         §        NO. 2:08-CV-194-J
§
RABO AGRIFINANCE, INC., and     §
AG ACCEPTANCE CORPORATION,    §
§
        Defendants.     §

## MEMORANDUM OPINION and ORDER

Before the Court is Defendants Ag Acceptance Corporation and Rabo Agrifinance, Inc.'s

Motion for Summary Judgment. Ag Acceptance and Rabo seek summary judgment on claims

brought against them by Plaintiff Terra Partners. Terra Partners asserts two claims against

Defendants. Claim one alleges that Ag Acceptance and Rabo converted equipment owned by

Terra Partners or leased by Terra Partners from Veigel entities. Claim two seeks declaratory

judgment regarding Terra Partners' alleged right of subrogation to a judgment lien originally held

by Diversified Financial Services, Inc.

### SUMMARY JUDGMENT STANDARD

This Court may grant summary judgment on a claim if the record shows that there is no

genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c). A party who moves for summary judgment has the burden of identifying the

parts of the pleadings and discovery on file that, together with any affidavits, show the absence of

a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). If the movant carries this burden, then the burden shifts to the nonmovant

to show that the Court should not grant summary judgment. Id. at 324-25. The nonmovant must set forth specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The nonmovant cannot rely on conclusory allegations, improbable inferences, and unsupported speculation. *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993). The Court must review the facts and draw all inferences most favorable to the nonmovant. *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

Summary judgment is also appropriate if "adequate time for discovery" has passed and a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact, 'but need not negate the elements of the nonmovant's case.'" *Little v. Liquid Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994), quoting *Celotex Corp.,* 477 U.S. at 323. The nonmovant must then show by affidavits, depositions, answers to interrogatories, admissions on file, or other evidence that there is a genuine issue of material fact for trial. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996).

### THE CONVERSION CLAIM

This is the fifth case between Veigel related parties and the Defendants before this Court and part of a long history of litigation in state and federal courts between the parties.[1]

---

[1] *Terra XXI Ltd. v. AG Acceptance Corp.*, No. 07-07-0374-CV, 2009 WL 2168741 (Tex. App. July 21, 2009) and *Terra XXI Ltd. v. Harmon*, 279 S.W.3d 781 (Tex. App. 2007) will be referred to collectively as the "State Court Wrongful Foreclosure Suit."
 *Terra XXI Ltd. v. AG Acceptance Corp.*, 280 S.W.3d 414 (Tex. App. 2008) will be referred to as the "Eviction Suit."

This case involves Section 21, 22, 39, 40, 42, 59, 60, 61 and 62 in Block K4, Deaf Smith County, Texas, which will be referred to as "The Farms." Section 59 and the east one-half of Section 60 in Block 4, Deaf Smith County, Texas, will be referred to as "the 960 Acres." The remainder is referred to as the "Big Farm."

***The Big Farm***

Rabo loaned Veigel Farm Partners and Terra XXI approximately $1.8 million between 1997 and 1999 for conducting farming operations in Deaf Smith County, Texas (the Secured Farming Loans).

In August and September of 2000, Veigel Farm Partners and Terra XXI respectively filed for Bankruptcy; their bankruptcy plans were confirmed in December 2001. Under the bankruptcy plans, Rabo's claims were secured by, among other liens, a second lien on all real property owned by Terra XXI in Deaf Smith County, Texas, and Quay and Guadalupe Counties, New Mexico. Additionally, as part of the bankruptcy proceedings, the parties agreed to reduce the Secured Farming Loans (by this point, paid down to roughly $1.6 million) to $1.5 million, without disturbing the liens securing them.

---

*Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 328 F. App'x 942 (5th Cir. 2009) and *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, No. 2:05-CV-243, 2008 WL 341425 (N.D.Tex. Feb. 7, 2008) will be referred to collectively as the "Second Lien Suit."

*Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, 583 F.3d 348 (5th Cir. 2009) and *Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, No. 2:06-CV-153, 2007 WL 2446278 (N.D.Tex. Aug. 29, 2007) will be referred to collectively as the "Equipment Suit."

*AG Acceptance Corp. v. Veigel*, 564 F.3d 695 (5th Cir. 2009) and *AG Acceptance Corp. v. Veigel*, No. 2:06-CV-272, 2007 WL 6889358 (N.D.Tex. Aug. 29, 2007) will be referred to collectively as the "Partition Suit."

*Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, 257 F. App'x 732 (5th Cir. 2007) and *Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, No. 2:05-CV-314, 2006 WL 2828748 (N.D.Tex. Oct. 4, 2006) will be referred to collectively as the "First Lien Suit."

In 2003, Terra XXI and Veigel Farm Partners defaulted on the now-reduced Secured Farming Loans. On September 2, 2003 Ag Acceptance conducted a non-judicial foreclosure on the Big Farm. Because the property was encumbered by superior liens for more than $3 million, Ag Acceptance purchased the Big Farm for $20,000 at the foreclosure sale, which it credited against the amount owed. The Veigel/Terra entities, however, refused to vacate the property.

In early 2004, Ag Acceptance filed a petition for forcible detainer in Deaf Smith County justice court (the Eviction Suit). Veigel entities responded by filing a suit in Deaf Smith County District Court, Texas, alleging, among other acts, wrongful foreclosure (the State Court Wrongful Foreclosure Suit). In the Eviction Suit, the justice court awarded Ag Acceptance possession of the property; the Veigel entities appealed the decision but the appeals were unsuccessful. In the State Court Wrongful Foreclosure Suit, Deaf Smith County District Court granted summary judgment in favor of Ag Acceptance; the Veigel entities' appeals were unsuccessful.

The limited return from the foreclosure sale of the Big Farm left a large deficiency on the Secured Farming Loans. Rabo sued to collect the deficiency on September 1, 2005, near the expiration of the two-year statute of limitations (the Second Lien Suit).

With the Second Lien Suit pending, Rabo filed the Equipment Suit for a temporary restraining order in Texas state court on June 7, 2006, seeking to prohibit "the Veigels, or any of their employees or agents, from injuring, destroying, damaging, or wasting the collateral ... in any manner" and to prohibit "the Veigels, or any of their employees or agents, from removing any of the collateral." The collateral consisted of farming equipment on which Rabo held the first lien pursuant to the Secured Farming Loans and the irrigation system on which Rabo, having bought out Diversified's interest, now also held the first as well as second lien positions. The equipment is

equipment which Terra Partners claims Rabo converted in this case.

The Equipment Suit was removed to federal court. Soon after removal, the United States District Court for the Northern District of Texas issued a preliminary injunction against the Veigel entities as follows:

> Terra XXI, Ltd. Veigel Farm Partners, Veigel Farms, Inc., Grain Central Station Inc., Veigel Grain Company, Robert W. Veigel (a/k/a Bob Veigel), Ella Marie Veigel, and Steve Veigel, and their officers, agents, servants, employees, attorneys, and those in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, restraining each and every one of them from injuring, destroying, damaging, or wasting the collateral described in the attached Exhibit A in any manner until the final judgment in this action or until further order of this Court, whichever occurs sooner.

> IT IS HEREBY FURTHER ORDERED that Terra XXI, Ltd. Veigel Farm Partners, Veigel Farms, Inc., Grain Central Station Inc., Veigel Grain Company, Robert W. Veigel (a/k/a Bob Veigel), Ella Marie Veigel, and Steve Veigel shall not remove any of the collateral described in the attached Exhibit A from Sections, 21, 22, 39, 40, 42, 59, 60, 61 or 62 in Block K4, Deaf Smith County, Texas, in any manner until final judgment in this action or until further order of this Court, whichever occurs sooner.

Terra Partners was joined as a defendant in the Equipment Suit on February 9, 2007.

Terra Partners is comprised of four corporate partners owned by Robert Veigel's family members: (1) Williams & Veigel, Inc.; (2) Burnett & Veigel, Inc.; (3) Kirk & Veigel, Inc.; and (4) Massey, Kirk, & Veigel, Inc. Terra Partners was formed in 2000 to farm the property just as Veigel Farm Partners did before going bankrupt. All but one person with an interest in Veigel Farm Partners also has an interest in Terra Partners.

### *The Writ of Possession*

On October 19, 2006, while the Equipment Suit was pending in Federal Court, a writ of possession was issued in connection with the state court Eviction Suit and was posted at the Big Farm. On October 23, 2006, pursuant to the writ of possession, Ag Acceptance took possession

of the Big Farm. Deaf Smith County Deputy Ginter executed the writ.

State of Texas Property Code § 240061 provides in relevant part:

(d)     The writ of possession shall order the officer executing the writ to:

    (2)     when the writ is executed:

        (A)     deliver possession of the premises to the landlord;

        (B)     instruct the tenant and all persons claiming under the tenant to leave the premises immediately, and, if the persons fail to comply, physically remove them;

        (C)     instruct the tenant to remove or to allow the landlord, the landlord's representatives, or other persons acting under the officer's supervision to remove all personal property from the rental unit other than personal property claimed to be owned by the landlord; and

        (D)     place, or have an authorized person place, the removed personal property outside the rental unit at a nearby location, but not blocking a public sidewalk, passageway, or street and not while it is raining, sleeting, or snowing.

(e)     The writ of possession shall authorize the officer, at the officer's discretion, to engage the services of a bonded or insured warehouseman to remove and store, subject to applicable law, part of all of the property at no cost to the landlord or the officer executing the writ.

(h)     A sheriff or constable may use reasonable force in executing a writ under this section.

Terra Partners did not own the Big Farm and did not owe a debt to Rabo or Ag Acceptance. Terra Partners, however, claimed to have an oral lease on certain of the equipment, including irrigation equipment, and claimed to own other equipment. Terra Partners alleges that it sought to remove all equipment from the Big Farm to the 960 Acres but that it was prevented from doing so because Defendants instructed and convinced Deputy Ginter that the writ of possession together with

this Court's temporary injunction prohibited the removal of all non-household personal and leased property. It alleges that Defendants thereby converted all of the equipment including that allegedly leased and that owned by Terra Partners.

Under Texas law, a conversion plaintiff must "establish (1) that it owned or had a right to possession of the property; (2) the defendant assumed and exercised dominion and control over the property; and (3) the defendant refused plaintiff's demand for return of the property." *TXNB Internal Case v. GPR Holdings*, 483 F.3d 292 (5th Cir. 2007); *see also Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.–El Paso 1993, no pet.).

On October 27, 2006, four days after the writ of possession was executed, Tom Riney, counsel for Rabo, wrote Van Northern, counsel for the Veigel entities and Terra Partners, a letter in which he stated that Rabo would conduct an inventory of all the remaining personal property on the Big Farm, as well as that on the 960 Acres and list the property and its location. He stated that Mr. Northern had told him that he believed some of the equipment might be owned by Terra Partners and not subject to a lien. Mr. Riney requested that Steve Veigel[2] attend and identify this property during the inventory. He stated that, at the conclusion of the inventory, Rabo would again give the Veigels a full and fair opportunity to remove any and all personal property that they could agree belonged to Terra Partners. Van Northern agreed to the inventory. Steve Veigel and Bob Veigel attended. They, however, refused to identify the property which Terra Partners claimed to own. The Veigel entities and Terra Partners steadfastly continued to refuse to identify property which they claimed belonged to Terra Partners. They continued in the refusal to identify Terra Partners'

---

[2] Throughout negotiations, Steve Veigel acted on behalf of both Veigel Farm Partners and Terra Partners, as well as certain other Veigel entities.

property until this Court, during the trial of the Equipment Suit, required the Veigel entities to identify ownership of the property listed on the inventory. Then, for the first time, Steve Veigel identified equipment which Terra Partners claimed to own. After certain equipment was identified as the property of Terra Partners, Rabo stated that it was not making any claim against that equipment and that it could be removed from the Big Farm. Terra Partners removed some but not all of that property.

Ordinarily, a person alleging conversion must establish that he demanded return of the property and that the defendant refused to return it. A qualified, good faith refusal to return property based on a reasonable request does not constitute conversion. *Whitaker*, 850 S.W.2d at 757.

The *Whitaker* case is analogous to the one before this Court. In *Whitaker*, a bank took possession of eight (8) mobile homes after default on a promissory note. Whitaker did not owe the note and claimed ownership of some of the mobile homes. The bank sought documentation of the claim from Whitaker but received no response. Whitaker then alleged that the bank converted his mobile homes. The Texas state court found that no conversion occurred. The court stated, "Defendants never refused to give him the mobile homes. At most, they made a reasonable request that he identify those which he claimed and provide some proof of his ownership interest. We find that the Defendants have proven as a matter of law that Whitaker cannot prevail."

In the case before this Court, the Defendants recognized that Plaintiff might have ownership of some of the equipment and made a reasonable request that Plaintiff identify that property so that arrangements could be made for the Plaintiff to obtain it. Plaintiff, for whatever reason, steadfastly refused to identify the property which it claimed. Under those undisputed circumstances, Defendants did not convert Terra Partners' owned property.

-8-

In the Equipment Suit, this Court found that pieces of equipment (on the inventory) that bear the notation "XXI Fixture," "Fixture XXI," "Fixture," "Fixture BV + TP," "Fixture XXI or BV + Heirs," or "Fixture XXI/BV and Heirs" are fixtures, and that the irrigation system's pumps, underground pipes, and underground electrical lines are fixtures. As fixtures, those pieces of equipment became part of the realty and went with the realty on the execution of the writ of possession. Defendants did not convert those items designated as fixtures in the Equipment Suit.

After the writ was posted on October 19, 2006, the Veigels had until October 23 to remove household items from the house and the elevator. They did not do so and on October 23 insisted they needed additional time to remove those items, and that they wanted time to move all of the equipment to the 960 Acres. Rabo contends that the dispute over the disposition of the property was resolved and that an agreement was reached that the Veigels would be given additional days to remove household property and that other property would remain on the Big Farm until the rights to the property were resolved in the pending Equipment Suit. Rabo contends that that agreement is supported by the deposition testimony of Steve Veigel. That testimony is as follows:

> Q.   What equipment did you want to move over to the 960?
> A.   We wanted to move all personal property, all equipment, and that was one of the arguments we were making with the deputy that everything from the irrigation motors, the wells and sprinklers–
> Q.   You were going to move that?
> A.   I was telling him it's ridiculous to think that we're going to be able to get it moved in any short period of time whatsoever. At some point in time the conversation got to be, well, we're going to have to be kicked off right there, they would lock everything up and put it on the highway and we could come pick it up. I think that's what – Mr. Walston finally got tired of the negotiation and told the sheriff to do that. Came back shortly thereafter with cooler heads and we worked out an agreement that we would stay 8:00 to 5:00 or 9:00 to 5:00 or something like that and move out the household items until Thursday, so that's how that – at the end of the discussions, you might say, that was how it was going to be handled. There was an agreement

reached that we couldn't move anything else, couldn't get into the shop or the barns, only get stuff out of the house and the elevator office, and all that had to be moved out prior to Thursday evening at 5:00, and we could only be out there certain times of the day.

Plaintiff correctly contends that Steve Veigel qualified that testimony in the deposition and also in his affidavit in opposition to the motion for summary judgment. Considering the facts and drawing all inferences most favorably to Terra Partners, Rabo is not entitled to summary judgment on the ground that the alleged agreement was reached.

The Defendants also allege that they are entitled to summary judgment because Terra Partners' alleged oral lease was fraudulent, because the cause of action for conversion is barred by the statute of limitations and by *res judicata,* and because the conversion cause of action was waived in the security agreement in question. There is not an absence of a genuine issue of material fact on those questions, and Rabo is not entitled to summary judgment on those grounds.

### Conclusion

The Court concludes that the Defendants are entitled to summary judgment on Plaintiff's claim for conversion of Terra Partners' property insofar as it alleges actions or representations by Rabo at the time of the execution of the writ of possession. It is also entitled to summary judgment on Plaintiff's conversion claim insofar as it alleges conversion of property determined in the Equipment Suit to be fixtures. The motion for summary judgment with regard to the conversion claim is otherwise DENIED.

# THE DECLARATORY JUDGMENT CLAIM

## *The Diversified Judgment*

Circle M Irrigation financed Veigel Farm Partners' purchase of an irrigation system and secured repayment with a purchase-money security interest in the irrigation system. Diversified Financial Services, Inc. acquired the debt and the purchase-money security interest. Robert Veigel executed an Unconditional Guaranty of the debt. Veigel Farm Partners defaulted on the debt and Diversified sued Veigel Farm Partners, Terra XXI, Robert Veigel, and others in state court. In the suit, Robert Veigel stipulated that he had unconditionally guaranteed the debt.

On May 22, 2000, Diversified obtained a judgment in state court against Veigel Farm Partners, Terra XXI, Robert Veigel, and other entities. The judgment was for roughly $550,000. On June 5, 2000, Diversified filed an abstract of judgment in Deaf Smith County, Texas in connection with the May 2000 judgment.

In August and September of 2000, Veigel Farm Partners and Terra XXI respectively filed for Bankruptcy; their bankruptcy plans were confirmed in December 2001. Diversified's claims were secured by a third lien on all of the real estate owned by Terra XXI in Deaf Smith County, Texas, Guadalupe County, New Mexico and Quay County, New Mexico, on which Diversified held liens on the date of the filing of bankruptcy.

In November of 2003, Diversified assigned its rights under the May 2000 judgment to Ag Acceptance, and on June 30, 2006, Robert Veigel paid Ag Acceptance in full the amount due under the May 2000 judgment. On September 11, 2006, Robert Veigel filed notice of payment with the District Clerk for the Deaf Smith County District Court. The notice claimed a right of contribution from the other guarantors on the debt and claimed the benefit of the judgment originally obtained

by Diversified. At some point between September and November of 2006, Robert Veigel assigned to Terra Partners the rights of subrogation and contribution he obtained by paying the debt owed under May 2000 judgment.

### The 960 Acres

There are two separate property interests in the 960 Acres - a 25% interest and a 75% interest. Originally, Robert Veigel owned the 25% interest and certain of his relatives (the Veigel Relatives) owned the 75% interest.

Ag Acceptance first obtained ownership in an undivided 75% interest in the 960 Acres on November 9, 2001 from the Veigel Relatives. In Terra XXI's bankruptcy, Ag Acceptance agreed to sell the 75% interest to Terra XXI for a $365,000 promissory note secured by a deed of trust. The bankruptcy court ordered that a special-warranty deed, the promissory note, and the deed of trust have an effective date of October 21, 2002. Terra XXI defaulted on the obligation under the confirmed bankruptcy plan and agreed orders by June 16, 2003. Ag Acceptance sent a notice of default and gave Terra XXI thirty days to cure. After default was not cured, Ag Acceptance sent Terra XXI a notice of acceleration of the obligation owed under the confirmed plan and agreed orders.

On September 5, 2003, Ag Acceptance informed Terra XXI of a foreclosure sale of the 75% interest in accordance with the deed of trust. On October 7, 2003, Ag Acceptance foreclosed on the 75% interest in the 960 Acres and bought the interest at the sale for $475,000. In the Partition Suit before the United States District Court for the Northern District of Texas, the Court ruled that Ag Acceptance validly foreclosed on the 75% interest of the 960 Acres.

On December 12, 2006, in the First Lien Suit, the United States District Court for the Northern District of Texas entered a judgment totaling $3,958,577 for Rabo. On January 10, 2007, Rabo attempted to partially satisfy the judgment and obtained a Writ of Execution from the District Clerk against Robert Veigel's 25% undivided interest. Robert and Ella Marie Veigel moved to stay the writ's enforcement arguing that a portion of the 25% interest constituted their homestead; the motion was denied. On February 6, 2007 the United States Marshal sold the 25% interest in accordance with the writ of execution and Rabo bought the interest for $200,000 at the execution sale. In the Partition Suit before the United States District Court for the Northern District of Texas, the Court ruled that Rabo validly executed on the 25% interest of the 960 Acres.

### *The Claims*

Terra Partners' second claim seeks declaratory judgment on issues associated with alleged subrogation rights related to Diversified's May 2000 judgment, preserved in bankruptcy as a third lien. Defendants' filed a counter-claim also seeking certain declarations associated with those subrogation rights. Defendants' motion for summary judgment asserts that Defendants are entitled to summary judgment against Terra Partners' on its declaratory judgment claims and for Defendants' on their own declaratory judgment counter-claims.

Plaintiff seeks declaratory judgment from the Court holding the following:

a. That as of September 12, 2006 TERRA PARTNERS, as assignee of Robert W. Veigel, has held and currently holds the right of subrogation to the judgment, purchase money liens, and abstracted judgment liens originally held by Diversified Financial Services as plaintiff in Cause No. CI-99G-078 in the 222nd District Court in and for Deaf Smith County, Texas and allowed under the confirmed Chapter 11 plans of reorganization of Terra XXI Ltd. and Veigel Farm Partners in bankruptcy Case Nos. 00-20877-SAF-ll entered on January 11, 2002 and 00-20858-SAF-ll entered on January 3, 2002 respectively;

b. That Diversified Financial Services' abstract of judgment liens attached to Terra XXI Ltd.' s et. al., current and future acquired real property interests in Deaf Smith County, Texas with actual and constructive knowledge of Defendants on June 5, 2000 when such abstract of judgment liens were recorded in Deaf Smith County, Texas;

c. That Diversified Financial Services' abstract of judgment lien was expressly allowed as a third lien on Terra XXI Ltd.'s real estate by Terra XXI Ltd.'s confirmed Chapter 11 plan of reorganization and that Defendant, Ag Acceptance Corporation's purported September 2, 2003 foreclosure under its original third lien deed of trust was judicially admitted by Ag Acceptance Corporation to have been made subject to Diversified Financial Services' superior judgment lien;

d. That Defendants had actual and constructive knowledge that Diversified Financial Services' abstract of judgment lien attached to Terra XXI Ltd.'s 75% undivided interest in Section 59 and the *E/2* of Section 60, Block K-4, Deaf Smith County, Texas on October 20, 2002 when Ag Acceptance Corporation agreed to convey such interest to Terra XXI Ltd. pursuant to a settlement agreement executed on the same date, yet Ag Acceptance Corporation failed to protect the priority of its subsequent security interest in the property;

e. That the Defendants had actual and constructive knowledge that the Diversified Financial Services' abstract of judgment lien attached to Robert W. Veigel's 25% undivided interest in Section 59 and the *E/2* of Section 60, Block K-4, Deaf Smith County Texas on June 5, 2000 and that such lien is valid and superior to Defendants' claims to title.

f. That TERRA PARTNERS is entitled, at its sole discretion, to execute on the judgment originally awarded to Diversified Financial Service in Cause No. CI-99G-078 on any or all of the real property in Deaf Smith County, Texas encumbered by the abstract of judgment lien on Terra XXI Ltd.' s real estate, including that subsequently purportedly acquired by Ag Acceptance Corporation by foreclosures of inferior liens to collect the amount owing on the judgment, plus interest, collection costs and attorney fees and costs;

g. Upon showing and proof, TERRA PARTNERS is entitled to a declaration of the total current amount owed by Defendants to TERRA PARTNERS, including accrued interest collection costs and attorneys fees and costs; and

h. Declaring that Defendants are permanently enjoined from contesting TERRA PARTNERS' right of subrogation to the Diversified Financial Services judgment and right to collect such judgment by execution on the abstract judgment lien on real property held or formally held by Terra XXI Ltd., Robert W. Veigel and Ella Marie Veigel.

Defendants seek declaratory judgment from the Court holding the following:

a. At the time of the September 2, 2003 foreclosure, Ag Acceptance Corporation held a lien on the Deaf Smith County property that was superior to the Diversified lien and that Ag Acceptance Corporation did not judicially admit that its lien was inferior to the Diversified lien;

b. The Diversified lien did not attach to Terra XXI's 75% interest in the 960 Acres;

c. If the Diversified lien did attach to Terra XXI's 75% interest in the 960 Acres, Ag Acceptance Corporation's lien was superior;

d. Terra Partners cannot use the Diversified Judgment to execute on Robert Veigel's former 25% interest in the 960 Acres;

e. Terra Partners cannot use the Diversified Judgment to execute on any property held or formerly held by Counter-Plaintiffs; and

f. Terra Partners is permanently enjoined from interfering with Counter-Plaintiffs' interest in any property held or formerly held by Terra XXI, Ltd., Robert W. Veigel and/or Ella Marie Veigel.

### A: Terra Partners' Right of Subrogation

Terra Partners asks the Court to declare that Terra Partners, as assignee of Robert Veigel, holds the right of subrogation to Diversified's lien under Terra XXI's bankruptcy plan.

This Court and the Fifth Circuit have previously addressed Terra Partners' right of subrogation via the assignment from Robert Veigel. In the Equipment Suit, the Fifth Circuit upheld this Court's ruling that "because Terra Partners was assigned the surety's rights where only partial payment of the Rabo debts had occurred, Terra Partners' interest could not become subrogated … until all of the Rabo debts were paid off." 583 F.3d at 355. It is undisputed that all of the debts to

Rabo have not been paid off. Because those debts have not been paid off, the Court does not declare that Terra Partners holds the right of subrogation to Diversified's lien under Terra XXI's bankruptcy plan.

The Court concludes that, in accordance with prior rulings on this issue, because the Rabo debts have not been paid off, Terra Partners' interest has not become subrogated at this time.[3]

**B: *Diversified's Lien Attachment to Terra XXI's Real Property Interests***

Terra Partners asks the Court to declare that Diversified's abstract of judgment lien attached to both Terra XXI's current and future acquired property interests in Deaf Smith County, Texas and that Defendants had actual and constructive knowledge of this.

Diversified's abstract of judgment lien was preserved in Terra XXI's bankruptcy plan as follows:

> **The Diversified claims will be secured by Diversified's existing abstract of judgment lien on all of the real estate owned by Terra XXI Ltd., Debtor, in Deaf Smith County, Texas,** Guadalupe County, New Mexico and Quay County, New Mexico, **on which Diversified held liens on the date of the filing of bankruptcy. Said liens are third liens.** However, since Veigel Farm Partners is paying the claim, Diversified may pursue Terra XXI, Ltd. and its property that is collateral of Diversified only in the event of uncured default in payment of Diversified by Veigel Farm Partners. (emphasis added).

The Bankruptcy Code states that "[e]xcept as otherwise provided in this subsection, in the [bankruptcy] plan, or in the order confirming the plan, the confirmation of a plan -- (A) discharges the debtor from any debt that arose before the date of such confirmation...." 11 U.S.C. § 1141(d)(1).

---

[3] Additionally, Defendants have asserted in a counter-claim that the transfer of subrogation rights from Robert Veigel to Terra Partners was fraudulent in that it was made with the intent to hinder, delay, or defraud creditors and/or made without receiving a reasonably equivalent value for the transfer at the time. Summary judgment argument and evidence on the legitimacy of the assignment to Terra Partners has not been presented. Should the Rabo debts at some point in time be paid off, the outcome of Defendants' counter-claim may affect Terra Partners' alleged right of subrogation.

Thus, Diversified's abstract of judgment lien was preserved to the extent allowed in the above cited bankruptcy plan and otherwise discharged.

Terra Partners uses assorted references to the Texas Property Code, the Bankruptcy Code, and Terra XXI's bankruptcy plan to contend that Diversified's lien attached to future property interests acquired by Terra XXI's in Deaf Smith County, Texas. Terra Partners first cites Texas Property Code § 52.001, which states "[e]xcept as [otherwise] provided ..., a first or subsequent abstract of judgment, when it is recorded and indexed in accordance with this chapter ... constitutes a lien on and attaches to any real property of the defendant, ... including real property acquired after such recording and indexing." Terra Partners then cites Bankruptcy Code § 1141(d)(1)'s precatory language, "[e]xcept as otherwise provided ... in the plan," and asserts that the language is important because Terra XXI's bankruptcy plan states "since Veigel Farm Partners is paying the claim, Diversified may pursue Terra XXI, Ltd. and its property that is collateral of Diversified only in the event of uncured default in payment of Diversified by Veigel Farm Partners." Terra Partners argues this language preserved Diversified's lien and provided that Diversified could pursue Terra XXI and its property in the event that Veigel Farm Partners defaulted and failed to cure the default. From these various citations, Terra Partners jumps to the conclusion that pursuant to Terra XXI's bankruptcy plan and by operation of Texas law, Diversified's lien would attach to all future interests of Terra XXI in Deaf Smith County, Texas.

Even assuming that, under the Texas Property Code, Diversified's abstract of judgment lien could have attached to future acquired property interests, that option was eliminated by Terra XXI's bankruptcy plan. Terra XXI's bankruptcy plan does not state that the Diversified lien will be secured by real estate owned by Terra XXI on which Diversified held liens on the date of filing of bankruptcy

*and* by real estate later acquired by Terra XXI to which, under Texas law, the Diversified lien could have attached. The bankruptcy plan states that Diversified's lien will be secured by the real estate owned by Terra XXI in Deaf Smith County *on which Diversified held liens on the date of filing of bankruptcy.*

As noted by Terra Partners, the bankruptcy plan does provide that Diversified could pursue Terra XXI and its property in the event that Veigel Farm Partners defaulted and failed to cure the default. This provision, however, does not lead to the conclusion that the plan allowed Diversified to pursue property acquired post-bankruptcy to collect on its third lien. The bankruptcy plan states that if Veigel Farm Partners failed to pay Diversified, Diversified could pursue Terra XXI "*and its property that is collateral of Diversified.*" (emphasis added). The collateral securing Diversified's lien was the real property owned by Terra XXI in Deaf Smith County, and other counties, on which Diversified held liens on the date of filing of bankruptcy. It simply sets out *when* Diversified was allowed to specifically pursue Terra XXI and the collateral. The plan language cited by Terra Partners in no way expands the scope of the property securing Diversified's lien.

The Court concludes that, assuming Diversified's abstract of judgment lien could, at one time, potentially have attached to property interests acquired in the future, in bankruptcy Diversified's abstract of judgment lien was preserved as a third lien on "all of the real estate owned by Terra XXI Ltd., Debtor, in Deaf Smith County ... on which Diversified held liens on the date of the filing of bankruptcy" and was otherwise discharged. Diversified's third lien did not attach to any real property interest acquired by Terra XXI post the filing of bankruptcy.

### C: Ag Acceptance's Foreclosure and Diversified's Lien

Terra Partners asks the Court to declare that (1) Diversified's abstract of judgment lien was, under Terra XXI's bankruptcy plan, a third lien on Terra XXI's real property, and (2) Ag Acceptance judicially admitted that its September 2, 2003 foreclosure was made under Ag Acceptance's original third lien deed of trust and is, therefore, subject to Diversified's superior lien. Defendants' counter-claim seeks the Court to declare that at the time of the September 2, 2003 foreclosure, Ag Acceptance held a lien on the Deaf Smith County property that was superior to the Diversified lien and that Ag Acceptance did not judicially admit that its lien was inferior to the Diversified lien.

First, the Court concludes that, in accordance with the bankruptcy plan quoted in subsection B, Diversified's abstract of judgment lien was secured by a third lien on "all of the real estate owned by Terra XXI Ltd., Debtor, in Deaf Smith County, Texas, Guadalupe County, New Mexico and Quay County, New Mexico, on which Diversified held liens on the date of the filing of bankruptcy." The Court, however, does not find that Ag Acceptance judicially admitted that its September 2, 2003 foreclosure was made under Ag Acceptance's original third lien deed of trust and, thus, is subject to a superior lien of Diversified's.

Terra XXI's bankruptcy plan states "[Ag Acceptance's] claim shall be secured by the following liens … : … (d) a second lien on all real property owned by Terra XXI, Ltd. in Deaf Smith County, Texas and Quay and Guadalupe Counties, New Mexico." Terra Partners concedes that Ag Acceptance was granted a second lien, but claims that Shawn Smeins, as corporate representative for Ag Services of America, Rabo and Ag Acceptance, "unequivocally testified," and thereby judicially admitted, that Ag Acceptance foreclosed on its third or fourth lien. Terra Partners asserts that because Ag Acceptance foreclosed on an "original 3rd lien deed of trust which was not allowed

under the Terra XXI Plan, instead of [its] original 2nd lien deed of trust," the foreclosure was made subject to the Diversified lien.

First, in the limited and disconnected testimony provided the Court, Shawn Smeins made the following statements regarding lien position: "we were in the second position on – really, we were third or fourth lien position;" "we were in a second or third position;" "we bid $20,000 for the second position;" "we had what they'll call a second lien position." Taken in context, Smeins was viewing the real estate property, on which the bankruptcy plan granted a second lien, and the irrigation system, on which the bankruptcy plan granted a third lien, as a whole. Regardless of whether Smeins was or was not referring to more than one lien, it cannot be reasonably concluded that Smeins "unequivocally testified" that Ag Acceptance foreclosed on a lien other than the one provided for in the bankruptcy plan.

More importantly, however, decisions by this Court and the Fifth Circuit have stated that the September 2, 2003 foreclosure was made pursuant to Ag Acceptance's second lien. *See Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348 (5th Cir. 2009) ("In September 2003 … Ag Acceptance foreclosed its second lien position in the 5,600 acres."); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 2008 WL 341425, No. 2:05-CV-243, at *2 (N.D.Tex. Feb. 7, 2008) ("A foreclosure sale was held on September 2, 2003. AAC was the sole bidder, and foreclosed on ASA's second lien position for $20,000."); *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, No. 2:06-CV-153-J, 2007 WL 2446278, at *1 (N.D.Tex. Aug. 29, 2007) ("Ag Acceptance Corporation foreclosed the second lien on the real property in Deaf Smith County.").

The Court concludes that Ag Acceptance's September 2, 2003 foreclosure was made pursuant to the second lien it was granted under Terra XXI's bankruptcy plan. Ag Acceptance did

not judicially admit that its lien was inferior to the Diversified lien. Ag Acceptance's lien on the Deaf Smith County property was superior to the Diversified lien and Ag Acceptance's foreclosure was not made subject to Diversified's lien.

### D: Diversified's Lien Attachment to Terra XXI's 75% Interest in the 960 Acres in Deaf Smith County, Texas

Terra Partners seeks a declaration that Defendants had actual and constructive knowledge that Diversified's abstract of judgment lien attached to the 75% interest in the 960 Acres when Terra XXI acquired that interest, yet Ag Acceptance Corporation failed to protect the priority of its subsequent security interest in the property. Defendants' counter-claim asks the Court to declare that the Diversified lien did not attach to Terra XXI's 75% interest in the 960 Acres. Alternatively, Defendants ask the Court to declare that if the Diversified lien did attach to Terra XXI's 75% interest in the 960 Acres, Ag Acceptance's purchase money security lien was superior to Diversified's lien.

Terra XXI filed for bankruptcy in September of 2000 and acquired its 75% interest in the 960 Acres in October of 2002. As stated in subsection B, Diversified's abstract of judgment lien was preserved as a third lien on "all of the real estate owned by Terra XXI Ltd., Debtor, in Deaf Smith County … on which Diversified held liens on the date of the filing of bankruptcy" and did not attach to any real property interest acquired by Terra XXI post the filing of bankruptcy. Terra XXI did not own the 75% interest in the 960 Acres on the date bankruptcy was filed, therefore, Diversified could not have held a lien against the 75% interest on the date bankruptcy was filed. Because Diversified did not hold a lien against that 75% interest on the date bankruptcy was filed, Diversified's abstract of judgment lien did not attach to the 75% interest in the 960 Acres.

The Court concludes that Diversified's abstract of judgment lien, preserved in bankruptcy as a third lien, did not attach to Terra XXI's 75% interest in the 960 Acres in Deaf Smith County, Texas. Because the Court concludes that the Diversified lien did not attach to Terra XXI's 75% interest in the 960 Acres, the Court need not address whether Ag Acceptance's purchase money security lien was superior to the Diversified lien.

### E: Diversified's Lien Attachment to Robert W. Veigel's 25% Interest in the 960 Acres in Deaf Smith County, Texas

Terra Partners seeks a declaration that Defendants had actual and constructive knowledge that Diversified's abstract of judgment lien attached to Robert Veigel's 25% interest in the 960 Acres in Deaf Smith County, Texas and that Diversified's lien is superior to any of Defendants' claims to the 25% interest in the 960 Acres. Defendants' counter-claim asks the Court to declare that Terra Partners cannot use the Diversified Judgment to execute on Robert Veigel's former 25% interest in the 960 Acres.

As already stated in this opinion, in May of 2000, Diversified obtained a judgment in state court against Terra XXI, Robert Veigel, and other entities. In June of 2000, Diversified filed an abstract of judgment in Deaf Smith County, Texas in connection with a May 2000 judgment. In September of 2006, Robert Veigel paid in full the amount due under Diversified's May 2000 judgment and filed notice of payment with the District Clerk for the Deaf Smith County District Court.

Regardless of whether Diversified's abstract of judgment lien initially attached to Robert Veigel's 25% interest, any right or interest of Diversified's in Robert Veigel's 25% interest by virtue of the abstract of judgment lien was extinguished when Robert Veigel paid the debt in full. It is

axiomatic that when a person pays a debt in full, and has no other associated obligations other than to pay the debt, that person's liability for the debt is discharged. Similarly, when no other obligations exist, full payment of a debt by a surety discharges that surety of liability for the debt. Terra Partners itself states that "[b]y paying off the Diversified Judgment, Robert Veigel extinguished the debt (and thus had no further liability for the same)...."

The Court concludes that if Diversified's judgment had attached to Robert Veigel's 25% interest in the 960 Acres, any right or interest of Diversified's in that 25% interest by virtue of the abstract of judgment lien was no longer effective after Robert Veigel discharged the debt in full. Thus, Diversified's lien is not superior to the claims of Defendants' in the 25% interest and Terra Partners cannot use the Diversified judgment to execute on Robert Veigel's former 25% interest.

## F: Terra Partners' Right to Execute on the Real Property in Deaf Smith County, Texas Encumbered by Diversified's Lien

Terra Partners asks the Court to declare that it is entitled to execute on Diversified's abstract of judgment lien on all of the real property in Deaf Smith County, Texas, including the property already foreclosed upon by Ag Acceptance. Defendants' counter-claim asks the Court to declare that Terra Partners cannot use the Diversified judgment to execute on any property held or formerly held by Defendants.

The Court held in subsections C, D and E, that Diversified's rights to the real property in Deaf Smith County, Texas are not superior to the rights of Defendants. Thus, the Court concludes that Terra Partners is not entitled to use Diversified's abstract of judgment lien to execute on the real estate in Deaf Smith County that was either foreclosed upon by Ag Acceptance or upon which

Ag Acceptance holds a superior lien, nor is Terra Partners entitled to execute on either the 75% interest or the 25% interest in the 960 Acres in Deaf Smith County, Texas.

### G: Amount Owed to Terra Partners by Ag Acceptance and Rabo

Terra Partners seeks a declaration from the Court that it is entitled to a declaration of the amount owed by Ag Acceptance and Rabo to Terra Partners. This Court has not held in Terra Partners' favor on any issue which would entitle Terra Partners to a monetary judgment from Ag Acceptance or Rabo. The Court concludes that, based on the issues presently before it, Terra Partners is not entitled to declaration of any amount owed to it by Ag Acceptance and Rabo.

### H: Enjoinment of Ag Acceptance and Rabo from Contesting Terra Partners' Right to Subrogation and Right to Execution

Terra Partners seeks a declaration from the Court that Defendants are permanently enjoined from contesting Terra Partners' right of subrogation to the Diversified lien or contesting Terra Partners' right to execute on that lien as it relates to property in Deaf Smith County, Texas. Defendants' counter-claim asks the Court to declare that Terra Partners is permanently enjoined from interfering with Defendants' interest in any property held or formerly held by Terra XXI, Robert W. Veigel and/or Ella Marie Veigel.

The Court has made conclusions regarding Terra Partners' right of subrogation and Terra Partners' right to execute on the Diversified lien in subsections A-F. The parties are bound by those conclusions.

*Conclusion*

Defendants Rabo Agrifinance, Inc. and Ag Acceptance Corporation are entitled to the following declarations:

(1)     Ag Acceptance's September 2, 2003 foreclosure was made pursuant to the second lien it was granted under Terra XXI's bankruptcy plan. Ag Acceptance's second lien on the Deaf Smith County property was superior to Diversified's third lien and Ag Acceptance's foreclosure was not made subject to Diversified's lien. Ag Acceptance did not judicially admit that its lien was inferior to the Diversified lien;

(2)     The Diversified lien did not attach to Terra XXI's 75% interest in the 960 Acres;

(3)     Terra Partners cannot use the Diversified judgment to execute on Robert Veigel's former 25% interest in the 960 Acres.

IT IS SO ORDERED.

Signed this 18th day of August 2010.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE